**O'HARE TRUCK SERVICE, INC. and John A. Gratzianna, Plaintiffs–Appellants,**

v.

**CITY OF NORTHLAKE, Reid Paxson, Mayor and Seymour Sapoznik, Police Chief, Defendants–Appellees.**

No. 94–1222.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1994.

Decided Feb. 10, 1995.

Rehearing Denied March 3, 1995.

Thomas C. Crooks, Chicago, IL, Michael P. McGovern (argued), Knoxville, TN, for plaintiffs-appellants.

Matthew E. VanCleave, Gary Feiereisel (argued), Frank Kasbohm, Fraterrigo, Best & Beranek, Chicago, IL, for defendants-appellees.

884

Before LAY,* EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

O'Hare Truck Service, Inc. and its owner John Gratzianna (collectively "O'Hare") filed this suit under 42 U.S.C. § 1983 against the City of Northlake, Illinois, its present mayor Reid Paxson and police chief Seymour Sapoznik (collectively "Northlake"). O'Hare claims that Northlake violated both its First Amendment and procedural due process rights. As the case was dismissed on the pleadings, we rely on the facts alleged in O'Hare's complaint.

Northlake, a suburb of Chicago, is a city of approximately 12,000 people. From time to time, Northlake's police department needs a vehicle towed. Northlake does not tow vehicles itself, and it does not contract directly with a tow company for services. Fees for towing services are paid by the towed vehicle's owner.

Since at least 1965, the police department has maintained a "rotation list." On the rotation list are a number of tow companies from the area (we do not know how many). When a vehicle tow is necessary, the police dispatcher is notified and calls a company on the list. If that company does not answer or cannot respond to the request, the dispatcher calls the next towing company listed until a company responds and makes the tow. When towing services are again required, the police dispatcher begins with the next company on the list—and so on—in rotation.

O'Hare alleges that the previous Northlake mayor, Gene Doyle, had told Gratzianna that his company would remain on the rotation list as long as it maintained the quality of its services. Furthermore, O'Hare claims that, shortly after Paxson was elected mayor in 1989, Paxson told Gratzianna "that he was pleased with the services provided by [O'Hare] and would continue the policy of former Mayor Doyle to retain O'Hare, and others, on the rotation list so long as the quality of services were maintained." Before the 1993 election for mayor of Northlake, Paxson's re-election committee solicited a

campaign contribution from Gratzianna. Gratzianna refused and publicly supported Paxson's opponent. Paxson won reelection, and shortly thereafter O'Hare was removed from the rotation list.

As we are reviewing the district court's dismissal of the action under 12(b)(6), we accept as true well pled facts and make all reasonable inferences in favor of O'Hare. *Propst v. Bitzer,* 39 F.3d 148, 154 (7th Cir. 1994).

## I. First Amendment

■ O'Hare claims that, by removing it from the rotation list in response to its support of Paxson's mayoral opponent, Northlake infringed its First Amendment right to freedom of political association. In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court held that most government employees may not be discharged solely on the basis of their political affiliation. The Court extended its holding in *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), to cover hiring, promotion, transfers and recalls as well.

Most courts that have explicitly addressed the issue whether to extend *Elrod*'s protection beyond government employees, however, have refused to do so. *See, e.g., Horn v. Kean,* 796 F.2d 668 (3rd Cir.1986); *LaFalce v. Houston,* 712 F.2d 292 (7th Cir.1983), *cert. denied,* 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 175 (1984); *Sweeney v. Bond,* 669 F.2d 542, 545 (8th Cir.), *cert. denied,* 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). Recently, however, in *Blackburn v. City of Marshall,* 42 F.3d 925 (5th Cir.1995), the Fifth Circuit, in a case similar to the one now before us, implicitly took a contrary position. *See also Abercrombie v. City of Catoosa,* 896 F.2d 1228 (10th Cir.1990). On the other hand, in *Downtown Auto Parks, Inc. v. City of Milwaukee,* 938 F.2d 705 (7th Cir.1991), this circuit held (consistent with *Horn, LaFalce,* and *Sweeney*) that a city may refuse to renew a parking lot lease with an independent contractor based upon that con-

* The Honorable Donald P. Lay, of the Eighth Circuit, sitting by designation.

tractor's political affiliation. The plaintiff in *Downtown Auto Parks* asked that we reexamine, in light of *Rutan,* our holding in *LaFalce,* the first case in this circuit that declined to afford independent contractors *Elrod's* protection.

In *LaFalce,* we gave three reasons for declining to extend *Elrod* to independent contractors. First, we examined the extent of the likely interference with an independent contractor's freedom to associate politically. We found that, compared to the impact on governmental employees, there was little chance that a contractor's freedom would be impinged. Second, we noted that the practical, administrative consequences of extending *Elrod's* protection could be severe. "A practical consideration reinforcing our caution is that a decision upholding a First Amendment right to have one's bid considered without regard to political considerations would invite every disappointed bidder for a public contract to bring a federal suit against the government purchaser." *Id.* at 294. Third, in light of these considerations, the court concluded that it should be up to the Supreme Court to extend *Elrod. Id.* at 295. The court in *Downtown Auto Parks* declined to overrule *LaFalce,* noting that although "*Rutan* did extend First Amendment protection, [it did so] only within the context of government employment." *Downtown Auto Parks,* 938 F.2d at 710. We likewise refuse to revisit the issue. Because O'Hare is not an employee of the city, we hold that the district court did not err in dismissing O'Hare's First Amendment challenge.

## II. Due Process

O'Hare also claims that Northlake violated its procedural due process rights by removing it from the rotation list without holding a hearing or giving it reasons for the removal. The district court dismissed O'Hare's procedural due process claim; it concluded that O'Hare did not have a property interest in remaining on the rotation list. The district court based its holding on our statement in *Wolf v. City of Fitchburg,* 870 F.2d 1327 (7th Cir.1989), that "the 'mutually explicit under-

standings' that constitute property interests under the holding of *Perry* cannot be based on the representations of government officials who are not authorized to make such representations." *Id.* at 1334.

The mutually explicit understandings referred to by the district court stems from two Supreme Court decisions in the early 70s. In *Board of Regents of State Colleges v. Roth,* the Supreme Court explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it.... Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

In *Roth's* companion case, *Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), the Court stated, "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." The Court invoked the state law concept of implied contracts (a type of mutually explicit understanding) to hold that the respondent, a teacher in the state college system in Texas, might have had a right to a pretermination hearing due to "an unwritten 'common law' in a particular university that certain employees shall have the equivalent of tenure." *Id.,* 408 U.S. at 602, 92 S.Ct. at 2700.

■ O'Hare seeks to bring its situation under this mutually explicit understandings jurisprudence. The most common form of mutually explicit understanding is an implied contract, and the district court's analysis centers on this area. The district court's conclusion that the mayor lacks authority to bind the city to an implied contract might well be correct. Yet we believe that the district court's focus on whether O'Hare could prove a contract interest was too narrow.[1] As it

1. Moreover, a contract analysis is inapposite. The only contract that conceivably arises is be-

tween O'Hare and the owner of the towed vehi-

did in this court, O'Hare simply, but rather vaguely, argued to the district court that because other courts had found a property interest in remaining on a towing list it should also.[2]

A number of courts have found a towing company to possess a property interest in remaining on a rotation list. In those cases, state statutes, or city ordinances or police department rules passed pursuant to statute, created the property interest. *See Pritchett v. Alford,* 973 F.2d 307, 317 (4th Cir.1992) (plaintiff had property interest due to South Carolina regulations); *Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1230 (10th Cir.1990) (plaintiff had property interest due to Oklahoma wrecker statute); *Gregg v. Lawson,* 732 F.Supp. 849, 853 (E.D.Tenn.1989) (plaintiff had property interest due to regulations); *but see White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1062 (2nd Cir.1993) (holding that plaintiff did not have property interest in towing assignment because arrangement was informal, in that no statute or regulation governed the assignment and plaintiff had no contract interest in assignment).

■ O'Hare admits that no statute, ordinance or written rule governs the rotation list. But, O'Hare appears to argue that Northlake's policy and practice concerning the rotation list rises to the level of an informal or unwritten administrative rule, bestowing upon it a property interest in remaining on the rotation list.

We have, of course, found property interests arising from internal rules or regulations, but only when they have the force of law. *See, e.g., Hohmeier v. Leyden Community High Sch. Dist. 212,* 954 F.2d 461 (7th Cir.1992); *Miller v. Henman,* 804 F.2d 421, 424 (7th Cir.1986); *see also Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (holding that Claims Manual of the Social Security Administration "is not a regulation. It has no legal force and does not bind the SSA.").[3] Because property interests are defined by reference to state law, *see Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, we must look to whether Illinois law recognizes such a claim. Outside the employment context (which is inapplicable because O'Hare is clearly not an employee), we have found no Illinois case that recognizes a legal entitlement based on implied or informal rules or regulations.

Moreover, with one exception,[4] O'Hare does not point us to, nor have we independently discovered, any decisions in other states which recognize such an entitlement. In this case, unwritten and informal policies and procedures relating to an internal police operation for securing the towing of vehicles in Northlake cannot be used as a basis for O'Hare to secure a property interest in being maintained on the rotation list.

For the reasons stated above, we AFFIRM the district court's dismissal of O'Hare's complaint.

cle. Northlake pays O'Hare nothing, and O'Hare performs no direct service for the city.

**2.** A party is deemed to have forfeited any legal argument not raised before the district court. *E.g., Citizens Ins. Co. of America v. Barton,* 39 F.3d 826, 828 (7th Cir.1994). While O'Hare's legal argument before this court and the district court for finding a property interest was not a model of clarity, we do not believe that it was not made. The plaintiffs in the cases relied on by O'Hare argued that a statute or regulation gave them a property interest. We interpret O'Hare's argument to be the same.

**3.** We note that, even if a rule or regulation has been promulgated in accordance with formal procedures, a person may not have a property interest in having the procedures followed. *See*

*Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (holding that in order to provide property interest, a regulation must establish "substantive predicates" that govern official discretion); *see also DeTomaso v. McGinnis,* 970 F.2d 211, 213 (7th Cir.1992).

**4.** In *Morris v. McCallie,* Civ. 4–91–032, 1993 WL 625544, slip op. (E.D.Tenn.1993), the district court held that a wrecker service held a property interest in remaining on a rotation list. In *Morris,* the Sheriff of Franklin County maintained an informal rotation list similar to the one in this case. It is unclear, however, whether the plaintiff held the interest due to an implied contract or due to the informal rules set out by the Sheriff. Moreover, the court seemed especially swayed by "[t]he fact that the Sheriff indicated that written regulations would eventually be adopted...." *Id.* at 4.