United States Court of Appeals,

Eleventh Circuit.

No. 94-3158.

MORLEY'S AUTO BODY, INC., a Florida Corporation, d/b/a Morley's Towing;  Morris Solow;  David Solow, d/b/a Dave's Towing;  Kenneth Solow, Plaintiffs-Appellees, Cross-Appellants,

v.

Don HUNTER, individually, and in his official capacity as Sheriff of Collier County;  L. Wayne Graham, individually, and in his capacity as a Captain in the Collier County Sheriff's Office, Defendants-Appellants, Cross-Appellees,

Collier County;  Collier County Sheriff's Office;  John Doe, 1-10, Defendants.

Dec. 18, 1995.

Appeal from the United States District Court for the Middle District of Florida. (No. 92-271-Civ-Ftm-23D), George T. Swartz, Magistrate Judge.

Before ANDERSON and CARNES, Circuit Judges, and Owens[*] District Judge.

CARNES, Circuit Judge:

Collier County Sheriff Don Hunter and Captain L. Wayne Graham appeal from a judgment entered against them in their official capacities.  That judgment followed a jury trial and was entered in favor of plaintiffs Morley's Auto Body, Inc., and David Solow, d/b/a Dave's Towing.  The main question presented in this 42 U.S.C. § 1983 case is whether two wrecker service companies, and their owners, had a constitutionally protected property interest in remaining on a wrecker rotation call list maintained by the Collier County Sheriff's Office.  Because such property interests must be determined by reference to state law, and because we can find no

[*]Honorable Wilbur D. Owens, U.S. District Judge for the Middle District of Georgia, sitting by designation.

Florida law to support their claim of entitlement, we hold that the plaintiffs have failed to establish that they had a property interest protected by the Due Process Clause of the Fourteenth Amendment. Therefore, we will reverse the judgment of the district court with respect to the procedural due process claim.

Additionally, this case involves the cross-appeal of the individual plaintiff David Solow. Solow, who claimed that Captain Graham violated his right under the Fourth and Fourteenth Amendments to be free of unreasonable seizure, appeals from the judgment entered by the district court after it granted a defense motion for a directed verdict. Because the record does not sufficiently link Captain Graham to the arrest related to this claim, we will affirm the district court's judgment as to it.

## I. FACTS AND PROCEDURAL HISTORY

County sheriffs' offices and other law enforcement agencies that are called to the scene of automobile accidents and breakdowns regularly summon wreckers to tow away disabled vehicles. These calls or referrals are an important source of business for wrecker service companies. The Collier County Sheriff's Office, like many law enforcement agencies, maintains a "rotation list" of local private wrecker service companies that it calls on a rotating basis when wrecker services are required.

In October 1990, Sheriff Graham issued a document entitled the "Collier County Sheriff's Office Wrecker Service Policy." The twelve-page typewritten policy specifies the various equipment and operating standards for wrecker service providers seeking to be placed on the rotation list, sets up an application process, and

spells out the operational details of the rotation system.  The policy also requires that wrecker services on the rotation list comply with the terms it specifies in order to remain on the list. The provisions of the policy are quite detailed.

The plaintiffs are two wrecker service businesses and their operators in Collier County.  Both wrecker services formerly received referral business from the Collier County Sheriff's Office through participation in the rotation call system.  Due to various incidents involving their operators and employees, both of the wrecker services were removed from the rotation list. [1]  The plaintiffs received no notice or opportunity for a hearing before they were removed from the list.

After being removed from the list, the plaintiffs commenced this lawsuit under to 42 U.S.C. § 1983.  Although the plaintiffs initially sought recovery under a number of theories of liability, the parties primarily focused on the plaintiffs' procedural due process claim, and so do we.[2]  Additionally, David Solow stated a claim against Captain Graham alone for unreasonable seizure in

---

[1]The incidents leading to the removal of the plaintiffs from the rotation list included various traffic citations and criminal charges, each of which was later reduced, dismissed, or *nolle prossed*.  One such incident ultimately led to the arrest of David Solow on a charge of tampering with evidence, and that arrest forms the basis for Solow's Fourth Amendment claim, which is discussed on pp. 18-20, below.

[2]In addition to constitutional claims, discussed *infra*, the plaintiffs included in their complaint a claim for breach of contract.  Under this theory, the plaintiffs contended that the wrecker rotation policy, as implemented by the Collier County Sheriff's Office, created a contractual relationship.  The district court dismissed this claim, finding that the relationship between the parties had "no mutuality of obligation to form a contract," and the plaintiffs did not appeal that dismissal.

violation of the Fourth and Fourteenth Amendments.  At the close of the plaintiffs' evidence, the district court directed a verdict in favor of Captain Graham on that claim.

## II. DUE PROCESS CLAIM

A. THE ISSUE

Resolution of the due process claim depends on the answer to a single question:  Did the plaintiffs have a constitutionally protected property interest in remaining on the rotation list?  "In assessing a claim based on an alleged denial of procedural due process a court must first decide whether the complaining party has been deprived of a constitutionally protected liberty or property interest.  Absent such a deprivation, there can be no denial of due process."  *Economic Dev. Corp. v. Stierheim,* 782 F.2d 952, 954-55 (11th Cir.1986).  It is undisputed that the plaintiffs received no notice or opportunity for a hearing prior to being removed from the rotation call list.  Therefore, as the defendants concede, if the plaintiffs had a constitutionally protected property interest in remaining on the rotation list, they were deprived of that interest without due process of law.

The crux of the plaintiffs' argument is that the "mutually explicit understandings of the parties," taken together with the written policy, gave rise to a property interest under the principles outlined in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  The defendants argue that the plaintiffs misconstrue the principles of *Roth,* at least as clarified by the Supreme Court's subsequent decision in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).  Relying

on *Bishop* and decisions of this Court that address the creation of property rights, the defendants argue that such property rights must be determined by reference to state law, and that Florida law recognizes no property interest under the circumstances of this case. Accordingly, the defendants contend that the district court committed reversible error by failing to hold, as a matter of law, that no such interest existed and by denying their summary judgment and directed verdict motions on this claim. We agree.[3]

B. STANDARD OF REVIEW

"State law defines the parameters of a plaintiff's property interest for section 1983 purposes," *Mackenzie v. City of Rockledge,* 920 F.2d 1554, 1559 (11th Cir.1991) and "[w]hether state law has created a property interest is a legal question for the court to decide." *Id.* (quoting *Marine One, Inc. v. Manatee County,* 877 F.2d 892, 894 (11th Cir.1989)). Questions of law are subject to *de novo* review by this Court. *E.g., Swint v. City of Wadley, Ala.,* 51 F.3d 988, 994 (11th Cir.1995).

C. ANALYSIS

In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court discussed the basic principles governing the existence of property interests subject to

---

[3]The district court submitted to the jury the ultimate question of whether the plaintiffs' constitutional rights were violated. That was error. The function of the jury, insofar as liability is concerned, is to decide genuine issues of material fact, of which there are none in this case. It is the function of the court, not the jury, to decide legal issues, such as whether the wrecker service policy that indisputably existed in this case created a property interest. Because there are no genuine issues of material fact involving the wrecker service policy claim, the legal issue of whether the policy created a property interest is dispositive of this claim.

procedural due process protections: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. The Court further explained how such a claim of entitlement may be created: "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Id.*

In *Perry v. Sindermann,* a companion case to *Roth,* the Supreme Court reiterated the conceptual basis for the creation of property rights: "A person's interest in a benefit is a "property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit...." 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). The plaintiffs point to the phrase "mutually explicit understandings" as support for their argument that their relationship with the Collier County Sheriff's Office creates a cognizable property interest, even in the absence of a contract with that office, and even in the absence of any supporting Florida statute, regulation, court decision, or any other source of Florida law creating the entitlement. The plaintiffs' argument fails, however, because it disregards the post-*Roth* teachings of the Supreme Court, and it is inconsistent with the law of this Circuit regarding the creation of constitutionally protected property interests.

After *Roth* and *Perry,* the Supreme Court clarified the relationship between state law and the creation of property interests, holding that "the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) (policeman had no property interest in his continued public employment because North Carolina law did not act to create such an interest); *see also Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) ("The hallmark of property ... is an individual entitlement *grounded in state law,* which cannot be removed except "for cause.' ") (emphasis added).

This Court has consistently applied the teachings of *Bishop* in the context of due process deprivation claims by looking to state law to determine whether a property interest has been created. *See Warren v. Crawford,* 927 F.2d 559, 562-64 (11th Cir.1991) (applying Georgia law to the question of whether the plaintiff in a wrongful discharge case had property interest in his county job and observing that even a "mutual understanding" cannot create a property interest contrary to state law); *Mackenzie,* 920 F.2d at 1559 (holding that plaintiff had no property interest in a building permit because Florida law creates no such interest); *Marine One,* 877 F.2d at 894 (same); *Shahawy v. Harrison,* 875 F.2d 1529, 1532 (11th Cir.1989) (relying on Florida statutory law in holding that physician had a property interest in the continuation of his medical staff privileges); *Schneider v. Indian River Community College Found.,* 875 F.2d 1537, 1544 (11th Cir.1989) (examining Florida statutory law and holding that plaintiffs in

wrongful discharge case had no property interest in their continued employment at a community college radio station); *Whitfield v. Finn,* 731 F.2d 1506, 1508 (11th Cir.1984) (applying Alabama law in determining that discharged city police officer had no property interest in his job); *see also Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1148-52 (11th Cir.1994) (en banc) (looking to Alabama law in holding that state university officials were entitled to qualified immunity in wrongful discharge case because it was not clearly established that university vice president had a property interest under state law in continued employment).

The decision in *Bishop* and this Court's precedents make clear that, if the plaintiffs in this case had a protected property interest in remaining on the wrecker rotation list in Collier County, that interest must be rooted in Florida law. The plaintiffs do not cite, and we have not found, any decision of any Florida court indicating that they had an entitlement to remain on the rotation list. Neither do they cite, nor have we found, any Florida statute, state administrative regulation, or any other source of Florida law that might be construed to provide the asserted entitlement.

Instead, the plaintiffs rely on the sheriff's wrecker rotation policy itself for the creation of the alleged property right. Their reliance is misplaced, because there is no Florida state law authority that elevates that policy to the status of a regulation with the force of law.[4] The policy was issued in the sole

---

[4]In contrast, we note that Florida statutory law governs the wrecker rotation system utilized by the Florida Highway Patrol, Fla.Stat.Ann. § 321.051 (West 1994), and entitles wrecker service

discretion of the Collier County Sheriff and no state agency with statutory authority to do so has authorized the sheriff to create the entitlement the plaintiffs urge us to recognize. Because any expectations arising from the wrecker rotation policy of a county sheriff are not grounded in Florida law, such a policy does not give rise to a constitutionally protected property interest.

The plaintiffs rely on Fla.Stat.Ann. sections 30.15, 30.53, and 316.640 as support for the proposition that Florida county sheriffs have authority to promulgate wrecker service regulations that have the effect of creating a legal entitlement. Section 30.15 defines the general "[p]owers, duties, and obligations" of county sheriffs but contains no delegation of regulatory power. Fla.Stat.Ann. § 30.15 (West 1988). Section 30.53 preserves the independence of sheriffs "concerning the purchase of supplies and equipment, selection of personnel ... setting of salaries," but says nothing about the promulgation of regulations. Fla.Stat.Ann. § 30.53 (West 1988). Section 316.640 authorizes the sheriff to "enforce all of the traffic laws" and to employ a "parking enforcement specialist" to assist in the issuance of parking tickets. Fla.Stat.Ann. § 316.640 (West 1989). In any event, the

operators to a hearing in connection with removal from that particular rotation system, Fla.Stat.Ann. § 120.57 (West 1982). However, no comparable statutory provision governs wrecker rotation systems established by Florida county sheriffs. Although the Collier County Wrecker Service Policy requires that all wrecker services on the Collier County rotation list qualify for participation in the Florida Highway Patrol rotation system, the incorporation of Florida Highway Patrol standards into the Collier County policy cannot bootstrap that policy into a regulation with the force of law. Neither Florida law nor the Florida Highway Patrol standards requires such incorporation or elevates it into the status of an entitlement.

question is not whether the sheriff had the authority to promulgate a wrecker rotation policy *per se.* Instead, the question is whether any state decisional law, statute, or regulation having the force of law authorized or mandated creation of the entitlement that plaintiffs claim. None did.

Although not binding precedent in this Court, *Piecknick v. Commonwealth of Pennsylvania,* 36 F.3d 1250 (3rd Cir.1994), informs our analysis of the wrecker rotation policy at issue in this case. In *Piecknick,* the Pennsylvania State Police created and distributed a wrecker service policy designed to allocate wrecker service referral calls within Washington County. *Id.* at 1253. A key issue in the case was whether the policy itself created a constitutionally protected property interest. As here, the policy at issue had not been specifically authorized by, or codified in, any state statute or regulation nor had it been approved by any state agency with authority to do so. *Id.* at 1258. These factors prompted the *Piecknick* court to conclude: "The guideline at issue here is not a regulation having the force of law.... Accordingly, Piecknick has not alleged any property interest entitled to protection under the Due Process Clause of the Fourteenth Amendment." *Id.* at 1259. We find persuasive the analysis of the Third Circuit in *Piecknick* and we likewise reject the argument that the policy involved in this case could, in and of itself, create a property right under Florida law.

D. *DURHAM v. JONES*

The preceding analysis illuminates the futility of the plaintiffs' efforts to distinguish *Durham v. Jones,* 698 F.2d 1179

(11th Cir.1983), this circuits's only precedent addressing property interests in the context of a wrecker rotation list. In *Durham,* a wrecker service operator brought a section 1983 action based on a Georgia sheriff's refusal to place him on the wrecker rotation list that the sheriff informally maintained. *Id.* at 1180. We held that the plaintiff did not have a property interest in being on that list. *Id.* at 1181.

The plaintiffs point to two facts in an attempt to distinguish this case from *Durham:* (1) a written policy is involved in this case, and (2) unlike the *Durham* plaintiff, the plaintiffs in this case have already received the benefits of wrecker service referrals. Yet these factual distinctions can lead to no difference in the result unless they operate to create a constitutionally protected property interest where there would otherwise be none. As to the first factual distinction, we know of no authority for the proposition that the act of reducing a wrecker rotation policy to writing can create a legally enforceable entitlement. There is no statute of frauds doctrine in procedural due process law. As a matter of logic, it does not follow from the fact that no written policy was involved in the *Durham* case where no property interest was found, that the presence of a written policy would create such an interest. As to the second factual distinction, it is axiomatic that the mere receipt of a benefit from the government does not automatically create an entitlement to that benefit. Therefore, the factual distinctions urged by the plaintiffs do not persuade us to reach a result different from that in *Durham.*

E. "WRECKER ROTATION" CASE LAW IN OTHER CIRCUITS

Our holding in *Durham,* and our holding in this case, is consistent with the law of other circuits that have considered the issue of property rights in the context of wrecker rotation lists. The Second, Third, Fourth, Fifth, Seventh, and Tenth Circuits have addressed this issue. The general principle that emerges from all of the decisions is that:

> Where a court has found a property interest in remaining on a rotation list, the plaintiff has alleged a claim of entitlement supported or created by a formal and settled source such as a state statute or regulatory scheme. Absent such an entitlement grounded in state law, courts have not found a protected property interest in remaining on a wrecker rotation list.

*Blackburn v. Marshall,* 42 F.3d 925, 938 (5th Cir.1995). To illustrate the application of this principle, and to illuminate our own analysis, we review briefly the cases from each of these circuits.

In the most recent case of this series, the Seventh Circuit considered whether a wrecker service company had a property interest in remaining on a city rotation list. *O'Hare Truck Serv., Inc. v. City of Northlake,* 47 F.3d 883 (7th Cir.1995). The wrecker service company in *O'Hare* claimed that the City of Northlake violated its procedural due process rights when the city removed it from the rotation list without providing an opportunity for a hearing. *Id.* at 884. Although no statute or ordinance governed the rotation system, the company argued nonetheless that it had a protected property interest in remaining on the list. The court rejected that argument stating, "We have, of course, found property interests arising from internal rules or regulations, but only when

they have the force of law."  *Id.* at 886.  Finding no Illinois authority supporting the conclusion that Northlake's policy and practice concerning the rotation list had the force of law, the Seventh Circuit held that the wrecker service company had no property interest in remaining on the list.  *Id.*

As noted previously, the Fifth Circuit articulated the general principle governing these cases in *Blackburn v. Marshall,* 42 F.3d at 938, another case in which the plaintiff claimed a property interest in remaining on a local law enforcement agency's wrecker rotation list.  The *Blackburn* Court drew from *Roth, Perry, Bishop, Logan,* and applicable Fifth Circuit decisions the principle that constitutionally protected property interests must be grounded in state law.  Applying that principle to the facts, the court concluded, "Because there apparently is no Texas or local statute, ordinance, or regulatory scheme governing the wrecker list ... we hold that Blackburn has failed to allege a property interest in remaining on the wrecker rotation list."  *Blackburn,* 42 F.3d at 941.

The Third Circuit applied the same principle in *Piecknick,* 36 F.3d at 1257-59.  Distinguishing wrecker rotation cases in which a property interest had been found, the court stated:  "These cases are distinguishable.  In all of them, a state statute or regulation gave a towing operator a property interest.  Here, there is no Pennsylvania statute or regulation governing towing or wrecker services."  *Id.* at 1257 (footnote omitted).  The court also considered and rejected, as we do, the contention that the applicable wrecker service policy at issue could, of itself, create

a protected property interest. *Id.* at 1259. Concluding that that policy was "not a regulation having the force of law" and noting the absence of "any other governing state law or regulation" to support the asserted entitlement, the court held that the plaintiff failed to establish a property interest protected by the Fourteenth Amendment. *Id.*

The Second Circuit considered whether a wrecker referral system created a property right in *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049 (2d Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993). In that case, the state police divided a section of a state highway into three zones, assigning exclusive towing referral rights to a single wrecker service within each zone. Under the system, the dispatcher called the assigned wrecker unless the disabled motorists requested a different wrecker service. The plaintiff brought a section 1983 due process claim when his exclusive zone assignment was terminated. The Second Circuit emphasized that the wrecker assignment system was not authorized by or codified in any New York statute or regulation and held that "regardless of their unilateral hopes or expectations, plaintiffs had no cognizable property interest in continued towing referrals ... and the mere termination of their status thus did not deprive them of a due-process-protected interest." *Id.* at 1062.

Applying the same principle in a different state law context, the Fourth Circuit has recognized that a wrecker service company has a constitutionally protected property interest in remaining on a rotation list when state regulations require maintenance of the

list for the stated purpose of providing companies with an equal opportunity to obtain the referral business. *Pritchett v. Alford,* 973 F.2d 307 (4th Cir.1992). That case involved a section 1983 due process claim brought by a wrecker service company that had been removed from a rotation list. The rotation list was governed by extensive state regulations that "required every highway patrol district to establish wrecker zones and "wrecker-rotation' lists for the zones ... to ensure that all wrecker services on the list have an equal opportunity to the towing business arising from the rotation list." *Id.* at 317. As the court explained, "Being on [the list] by virtue of this *state regulatory regime* insured that it was a legally enforceable entitlement...." *Id.* (emphasis added). As we have noted, no such state regulatory regime is present in this case.

Likewise, the Tenth Circuit has recognized a protected property interest in continued wrecker referrals when the referral system was directly governed by a state wrecker statute mandating that referrals be made on an equal basis. *Abercrombie v. City of Catoosa,* 896 F.2d 1228 (10th Cir.1990). The plaintiff in *Abercrombie* brought a section 1983 due process claim after he was removed from a city's wrecker rotation list. To support his claim of entitlement, the plaintiff relied on the state wrecker statute, which required the city "to make wrecker referrals on an equal basis as nearly as possible" to licensed wreckers in or near the city limits. *Id.* at 1232. Closely examining the applicable statute, the court concluded that it "created a property interest in wrecker referrals in favor of the plaintiff." *Id.* As

previously explained, no analogous Florida statute operates to create a property interest in this case.

In summary, every circuit to date that has considered the creation of property interests in the context of wrecker rotation lists has reached a decision in harmony with the principle recently distilled by the Fifth Circuit in *Blackburn:* The existence of a property right in such a case turns on whether the alleged claim of entitlement is supported or created by state law such as a state statute or regulatory scheme or decisional law. We see no reason for this circuit to depart from that principle, which is entirely consistent with our *Durham* decision.

Because the plaintiffs have not, and apparently cannot, point to any Florida statute, state administrative regulation, or any other source of Florida law that provides the asserted entitlement in remaining on the wrecker rotation list, we hold that they have failed to allege a property interest protected by the Due Process Clause of the Fourteenth Amendment. Accordingly, the judgment of the district court must be reversed with respect to the plaintiffs' claims arising from their removal from the list.[5]

---

[5]In addition to the property interest claim, the plaintiffs' second amended complaint averred a procedural due process liberty interest claim, a substantive due process claim, and an equal protection claim resulting from their removal from the wrecker rotation list.

The plaintiffs rely on *Cowan v. Corley,* 814 F.2d 223 (5th Cir.1987) as support for their argument that they had a liberty interest in remaining on the rotation list. This reliance is misplaced. In *Cowan,* the Fifth Circuit held that it was error to dismiss a wrecker service's liberty interest claim when "[a]ll wrecker assignments, including those made on an owner-preference basis were routed through the sheriff's office," *id.* at 225, which allegedly resulted in the plaintiff's "exclusion from *all* wrecker calls

# III. UNREASONABLE SEIZURE CLAIM

David Solow's cross-appeal of the district court's decision to grant Captain Graham's directed verdict motion on the unreasonable seizure claim need not detain us long. Solow's claim arises from a dispute he had at the scene of an automobile accident with Collier County Deputy Sheriff Charles Campbell, who is not a defendant in this case. When Deputy Campbell arrived at the scene, Solow had already loaded a wrecked vehicle for towing. Deputy Campbell informed Solow that the vehicle would need to be unloaded to facilitate the investigation. Solow became upset at the

---

originating on public property," *id.* at 227 (emphasis added). Here, the removal of the plaintiffs from the rotation list does not affect their right to operate wrecker service businesses, to remove vehicles from public property at the request of the owners, or to provide wrecker services to any member of the public who requests such services. In short, the removal of the plaintiffs from the rotation list does not cognizably burden the plaintiffs' liberty "to follow a chosen profession free from unreasonable governmental interference," *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959), or "to work for a living in the common occupations of the community," *Truax v. Raich,* 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915).

The plaintiffs' substantive due process claim is palpably without merit. Any expectations the plaintiffs may have had regarding the rotation list do not approach a right "implicit in the concept of ordered liberty" as required for the triggering of substantive due process protection. *See McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937); *see also Lovins v. Lee,* 53 F.3d 1208, 1209 (11th Cir.1995) (discussing the restricted authority of federal courts to expand substantive due process rights).

The plaintiffs' equal protection claim is equally meritless, as they have "neither asserted nor established the existence of any suspect classification or the deprivation of any fundamental constitutional right." *Hurrah Indep. Sch. Dist. v. Martin,* 440 U.S. 194, 199, 99 S.Ct. 1062, 1065, 59 L.Ed.2d 248 (1979).

prospect of losing the towing job, but unloaded the vehicle when Deputy Campbell directed him to do so. Subsequently, Deputy Campbell completed an affidavit seeking Solow's arrest. The warrant issued and Solow was arrested on a charge of tampering with evidence in violation of Fla.Stat. section 918.13. Following his arrest, Solow did not sue Deputy Campbell; instead, he sued Captain Graham.

At the close of the plaintiffs' proof in this case, the district court granted Captain Graham's motion for a directed verdict on the unreasonable seizure claim on the basis that probable cause existed to support the arrest. In ruling on this motion, and in response to argument from Solow's attorney, the court stated: "I think you're wrong, counsel. Once a warrant has been issued, at least in this circuit, that is probable cause. It's absolute probable cause as far as I know about it. I don't see how you can get around it." The district court was mistaken, because the issuance of a warrant cannot transform an unconstitutional arrest into a constitutional one, nor can it insulate from liability an officer who obtains the warrant. *E.g., Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). However, the constitutionality of Solow's arrest is irrelevant insofar as the defendant in this case, Captain Graham, is concerned, unless a sufficient connection exists between Captain Graham and the arrest.

The record shows no such connection. Deputy Campbell testified that his supervisor, Sergeant Greve, directed him to take information to the State Attorney's Office to determine whether

there was sufficient evidence for prosecution.  It is undisputed that after consultation with an Assistant State Attorney, Deputy Campbell completed and signed the affidavit seeking Solow's arrest. Although the testimony of Captain Graham is somewhat ambiguous on this point, it appears from the testimony that the extent of his involvement in the matter was limited to reviewing the facts with Deputy Campbell, telling him to proceed with the investigation and to take his findings to the State Attorney's office, and discussing the incident with in-house counsel at the Collier County Sheriff's Office.

Because Solow failed to offer sufficient evidence to present a jury issue on whether Captain Graham caused Deputy Campbell to obtain the warrant, we affirm the trial court's decision to direct a verdict in Graham's favor on this claim.[6]

### IV. CONCLUSION

For the foregoing reasons, the judgment of the district court respecting the removal of the plaintiffs from the wrecker rotation list is REVERSED, the judgment of the district court with respect to David Solow's unreasonable seizure claim is AFFIRMED, and the case is REMANDED for entry of a judgment in favor of the defendants on all claims.

---

[6]Because both defendants are entitled to judgments in their favor as to all the claims involved, their other arguments and the plaintiffs' cross-appeal contending that the district court erred in dismissing the defendants in their individual capacities are moot.