[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is Plaintiff Sterry Street Auto Sales, Inc. d/b/a Sterry Street Towing's ("Plaintiff" or "Sterry Street") petition for declaratory and injunctive relief, requesting that this Court enjoin Defendant Rhode Island State Police ("Defendant" or "State Police"), from removing Sterry Street from the State Police Tow Service Lists ("Tow Lists"). Defendant objects to Plaintiff's motion.
 Facts and Travel
The Plaintiff, Sterry Street Auto Sales, Inc. d/b/a Sterry Street Towing is a Rhode Island corporation with a place of business located at 77 Sterry Street, Pawtucket, Rhode Island. Defendant Steven M. Pare ("Colonel Pare") is the Superintendent of the State Police, a division within the executive department of the State of Rhode Island. Defendant Steven O'Donnell holds the rank of a Major in the State Police and is in charge of the administrative services of the State Police.
In 1993, Sterry Street applied for and was accepted for inclusion on the State Police list of approved operators for towing vehicles. There are two lists available — one for towing vehicles less than 10,000 lbs. gross vehicle weight ("GVWR") ("the Tow Service List") and one for handling accidents, recovery and winching for vehicles over 10,000 lbs GVWR ("the Recovery Service List"). Oversight of the Tow Lists is conducted pursuant to Rhode Island State Police General Order 56B3 ("the Tow Service Policy").
On December 8, 2003, the State Police informed Sterry Street that it intended to remove it from the Tow Lists because Raymond Allard ("Allard"), an "employee" of Sterry Street was involved in a motor vehicle accident on October 16, 2003 while operating on a suspended license. The State Police also alleged that there was an outstanding warrant for Allard, for failure to appear on a charge of violation of banking laws. Additionally, the State Police cited Sterry Street's alleged failure to notify the State Police of a change in personnel.
The December 8, 2003 State Police correspondence required Sterry Street to — within ten days — provide a written response explaining why it should not be terminated from the Tow Lists. On December 18, 2003, Sterry Street, through its attorney, responded to the December 8, 2003 State Police correspondence and explained that Allard was only temporarily hired, on September 22, 2003, and that pursuant to the policy of Sterry Street, Mr. Allard was on probationary status for ninety days. Further, Sterry Street explained that only permanent employees of Sterry Street are allowed to participate in State Police tows.
At the time Sterry Street temporarily hired Mr. Allard, it conducted a background check, which established that his driving record did not disqualify him from potential employment. However, Sterry Street discharged Allard and severed all ties with him immediately after the automobile accident of October 16, 2003. Therefore, in its December 18, 2003 letter to the State Police, Sterry Street requested re-consideration of the termination and a hearing on the merits regarding the allegation.
In response to Sterry Street's correspondence, the State Police agreed to meet with representatives of Sterry Street to discuss its termination from the Tow Lists. On March 17, 2004, representatives of Sterry Street met with Major Stephen O'Donnell ("O'Donnell") of the State Police. On May 5, 2004, Major O'Donnell advised Sterry Street that the State Police would not reconsider Sterry Street's termination from the State Police Tow List. The May 5, 2004 correspondence from Major O'Donnell also provided that if the incident involving Allard had been Sterry Street's first offense than suspension would have been implemented rather than removal from the Tow List.
 Standard of Review
"In deciding whether to issue a preliminary injunction, the hearing justice must consider whether the moving party: (1) has a reasonable likelihood of success on the merits; (2) will suffer irreparable harm without the requested relief; (3) has the balance of equities in his or her favor; and (4) has shown that the requested injunction will maintain the status quo." Pucino v. Uttley, 785 A.2d 183, 186 (R.I. 2001). "In determining the reasonable likelihood of success on the merits [the court does] not require the moving party to establish `a certainty of success[;]' rather, `[the court] require]s] only that [it] make out a prima facie case." DiDonato v. Kennedy, 822 A.2d 179, 181 (R.I. 2003) (citing Fund for Community Progress v. United Way of Southeastern NewEngland, 695 A.2d 517, 521 (R.I. 1997)). Additionally,
 in considering the equities, the hearing justice should bear in mind that `the office of a preliminary injunction is not ordinarily to achieve a final and formal determination of the rights of the parties or of the merits of the controversy, but is merely to hold matters approximately in status quo, and in the meantime to prevent the doing of any acts whereby the rights in question may be irreparably injured or endangered.'" Fund for Community Progress, 695 A.2d at 521
(quoting Coolbeth v. Berberian, 313 A.2d 656, 660 (1974)).
 Due Process
First, Plaintiff argues that the State Police deprived Plaintiff of its property interest without due process of law in violation of Article 1, Section 2 of the Rhode Island Constitution by failing to provide a pre-termination hearing before it removed Sterry Street from the Tow Lists. Plaintiff maintains that Defendant's failure to inform Plaintiff that the decision to remove Sterry Street from the Tow Lists was partially based upon prior alleged incidents deprived Sterry Street of the opportunity to adequately defend its property interest in remaining on the Tow Lists. Plaintiff contends that the State Police used the Allard incident and other alleged incidents as a justification for permanently removing Sterry Street from the Tow Lists, despite the fact that Sterry Street never admitted liability or guilt as to those previous incidents.
While our Supreme Court has not directly addressed the question of whether placement on a tow or wrecker list gives rise to a constitutionally protected interest, many federal circuit courts have addressed this precise issue. These federal circuit courts have commonly held that the key factor in determining if membership on a tow or wrecker list creates a constitutionally protected interest is whether there is any source of state law creating such entitlement. In Piecknick v.Commonwealth of Pennsylvania, 36 F.3d 1250 (3rd Cir. 1994) for example, the Third Circuit addressed the issue of whether the plaintiffs had a constitutionally protected property interest in a wrecker rotation policy created and distributed by the Pennsylvania State Police. Finding that the policy at issue had not been specifically authorized by, or codified in, any state statute or regulation, nor had it been approved by any state agency with authority to do so, the Piecknick Court declared:
 "The guideline at issue here is not a regulation having the force of law. . . . Accordingly, Piecknick has not alleged any property interest entitled to protection under the Due Process Clause of the Fourteenth Amendment." Id. at 1259.
Similarly, in Blackburn v. City of Marshall, 42 F.3d 925 (5th Cir. 1995), the Fifth Circuit found that the plaintiffs did not have a constitutionally protected property interest in retaining their placement on a rotation list and affirmed the grant of the defendants' Rule 12(b)(6) motion to dismiss. The Blackburn Court reasoned that:
 "[b]ecause Blackburn does not allege that his property interest remaining on the rotation list stems from a state statute or regulatory scheme, a contract, or any other independent source, we find that Blackburn has failed to allege a property interest protected by the Due Process Clause of the Fourteenth Amendment." Id. at 940.
The Court went on to point out that this set of circumstances should be distinguished from cases in which a tower or wrecker "allege[s] a claim of entitlement supported or created by a formal and settled source such as a state statute or regulatory scheme." Id.
The Eleventh Circuit embraced this same reasoning in Morley's AutoBody, Inc. v. Hunter, 70 F.3d 1209 (11th Cir. 1995). The Morley's Court declared:
 "The Plaintiffs rely on the Sheriff's wrecker rotation policy itself for the creation of the alleged property right. Their reliance is misplaced, because there is no Florida state law authority that elevates that policy to the status of a regulation with the force of law. [Footnote omitted.] The policy was issued in the sole discretion of the Collier County Sheriff and no state agency with statutory authority to do so has authorized the Sheriff to create the entitlement the Plaintiffs urge us to recognize. . . . we likewise reject the argument that the policy involved in this case could, in and of itself, create a property right under Florida law." Id. at 1214.
Sterry Street contends that these cases are distinguishable from the present case because the parties in the instant matter had a mutually explicit understanding which gave rise to a property right in the Tow Lists. However, in Morley's, the Eleventh Circuit rejected this same argument on the basis that a sheriff's authority to promulgate a wrecker rotation policy per se does not automatically give the members a property interest in remaining on that rotation policy. Id. The Morley's Court emphatically stated that the fact that there was a written policy involved and that the plaintiffs received benefits from being on the policy did not automatically create a legally enforceable entitlement to those benefits. Id. The crucial question in assessing whether there is a property right in such a list is "whether any state decisional law, statute, or regulation having the force of law authorized or mandated creation of the entitlement that plaintiffs claim." Id. As there is no Rhode Island decisional law, statute or regulation affording Plaintiff such an entitlement, this Court finds that Plaintiff did not have a constitutionally protected property right in remaining on the tow lists.
 Equal Protection
Next, Plaintiff argues that Sterry Street was denied equal protection because the State Police's interpretation of the Tow Service Policy as excluding all tow companies that employ drivers — or anyone else — whom the owner knows "violates the laws of the State" is overbroad and not rationally related to a legitimate state interest. According to Plaintiff, no legitimate state interest is served by enforcing a regulation which permits the removal of a tow company that unwittingly employs a driver with a suspended license. Additionally, Plaintiff maintains that strict notification requirements regarding probationary employees who the tow company does not permit to respond to state tows fails to promote any legitimate state interest.
In Kleczek v. Rhode Island Interscholastic League, Inc., 612 A.2d 734,737 (R.I. 1992), the Supreme Court "note[d] that the equal-protection clause of the Fourteenth Amendment to the United States Constitution is implicated only when a classification treats persons similarly situated in different ways." (citing Reed v. Reed, 404 U.S. 71, 75-76 (1971)). The Court further stated that "the equal protection clause does not demand that a statute necessarily apply equally to all persons. . . . [Or] require [that] things which are different in fact . . . be treated in law as though they were the same." Kleczek, 612 A.2d at 737 (citing Rinaldiv. Yeager, 384 U.S. 305, 309 (1966)) (internal quotations omitted).
As it is clear that there is no fundamental right or suspect class involved in the State Police's removal of Plaintiff from the Tow Lists, the requisite equal protection analysis in the present case is the rational basis test. Under the rational basis test the question is whether the classification at issue bears a rational relationship to a legitimate state interest. Boucher v. McGovern, 639 A.2d 1369, 1379
(R.I. 1994). The State Police's authority to enforce the Tow Policy derives from the inherent State police power to protect public health, safety and welfare and to control traffic and maintain safety on State highways. In the instant matter, the State Police made a decision to remove Plaintiff from the Tow Lists because Sterry Street's offenses were in violation of State Police regulations. Admittedly, this decision was triggered by Plaintiff's hiring of Allard — a tow vehicle operator who was involved in a motor vehicle accident on the job while he was on a suspended license. This Court does not view this as an irrational decision by the State Police when the most important threshold requirement of an employee when he/she is towing vehicles is that he/she have a valid operator's license. Moreover the State Police's insistence — as a law enforcement agency — that entities they choose to have a business relationship with exercise a high degree of selectivity in their hiring practices is likewise rational and prudent. It is clear to this Court that the State Police's removal of Plaintiff from the Tow List was rationally related to the State's police power, and therefore, this Court finds Plaintiff's equal protection argument unpersuasive.
 Breach of Contract
Plaintiff further argues that the State Police breached its contract with Sterry Street when it unilaterally decided to remove Sterry Street from the Tow List. Sterry Street contends that Section IV of the Policy, which governs the required licenses for those operating tow trucks, applies only to personnel who do or may be called to respond to calls received from the State Police pursuant to the contractual undertaking evidenced by the Tow Service Policy. Conversely, Defendant maintains that the Tow Policy did not constitute a contract because there was no consideration or mutuality of obligation, and therefore Plaintiff cannot prevail on a breach of contract claim.
The elements of a contract are offer, acceptance, consideration, mutuality of agreement and mutuality of obligation. See Smith v. Boyd,553 A.2d 131 (R.I. 1989) and Lamoureux v. Burrilville Racing Assn.,91 R.I. 94, 161 A.2d 213 (R.I. 1960). The court must make "the predicate findings of offer, acceptance, consideration and breach requisite to determining a breach of contract claim." Gorman v. St. Raphael Academy,853 A.2d 28, 33 (R.I. 2004).
While there are no cases directly addressing the issue of whether a Tow Policy amounts to a contract, many courts have considered the issue of whether medical staff bylaws constitute a contract despite the fact that there is no traditional consideration. See Craig W. Dallon, UnderstandingJudicial Review of Hospitals' Physician Credentialing and Peer ReviewDecisions, 73 Temp. L. Rev. 597 (2000). Like membership on a Tow Policy which gives a tow company certain privileges, medical staff membership entitles a physician to certain privileges and "gives the physician a voice in the operation of the hospital." Id. A majority of courts have found that medical staff bylaws are a binding contract between the hospital and its medical staff members, reasoning that if bylaws were not enforceable they would be rendered meaningless. Id. at 640-41. InBerberian v. Lancaster Osteopathic Hospital Association Inc., 149 A.2d 456
(Pa. 1959), one of the first cases to adopt the view that medical staff bylaws give rise to a contractual relationship, the Pennsylvania Supreme Court held:
 "While there can be no doubt that the board of directors of the hospital has authority to deprive a physician of the privileges of the staff, it is equally clear that the board has agreed to follow certain specified procedures before determining whether to exercise its authority in a matter of a staff member's expulsion from the hospital . . . When the board of directors approved the staff-by-laws, they became an integral part of the contractual relations between the hospital and the members of its staff."
Assuming that the Tow Policy in the instant case does amount to a contract because the State Police agreed to follow certain procedures, in order to prevail on a breach of contract claim the Plaintiff still must show that the State Police failed to abide by the procedures set forth in the policy. Plaintiff has not provided this Court with any evidence indicating that the State Police breached the Tow Service Policy in making the decision to remove Sterry Street from the Tow Lists. The Tow Policy makes it very clear that the State Police retain wide discretion in making determinations as to whether members on the list are subject to suspension or termination from the list. Section IV of the Tow Policy provides in pertinent part:
 "c. All persons operating a tow truck or service vehicle for the applicant shall possess a valid and proper driver's license for the type of vehicle being operated.
 . . .
 d. All persons operating a tow truck or service vehicle for the applicant must have a satisfactory driving record.
 . . .
 4. Any tow company on the Division's Tow list must report changes in equipment, personnel, and/or facilities to the [Officer in Charge] of the Traffic Services Unit . . . within five days of the change.
 . . .
 20. A towing company may be suspended or terminated from the State Police tow list because of pending criminal or civil complaint or if its performance is/may tarnish the reputation of the Division."
Furthermore, that same section of the Tow Policy provides as follows:
 "A tow company shall be notified by the OIC of the Traffic Services Unit of a proposed suspension or termination from a State Police Tow List. Suspension or termination may be immediate if the OIC of the Traffic Services Unit determines that it is in the public interest. Within ten (10) business days from the date of such notice a tow company shall have the opportunity to provide a written response explaining why it should not be suspended or terminated including any supporting documentation. The OIC of the Traffic Services Unit shall review with the Superintendent or his designee any documentation and/or explanation provided by the tow company. A written determination confirming, modifying or revoking the suspension or termination shall be provided by the OIC of Traffic Services within ten (10) business days of receipt of the tow company's response."
Pursuant to the procedures set forth in its Tow Policy, the State Police sent a letter to Sterry Street dated December 8, 2003, which stated that it "propose[d] to terminate [Sterry Street's] privilege to tow for the Rhode Island State Police if reasons are not provided that would justify retention of [the] company on the Division tow list." This letter was prompted by a motor vehicle accident involving one of Sterry Street's temporary employees. At the time this accident occurred, the employee was operating a tow vehicle with a suspended driver's license and Sterry Street had failed to notify the State Police of this change in personnel. The hiring of a tow vehicle operator with a suspended license and the failure to notify the State Police of a change in personnel are both listed as reasons for disciplinary action under the Tow Policy. Plaintiff's Attorney responded to the State Police by letter dated December 18, 2003. On January 6, 2004, the State Police wrote: "After reviewing statements and explanations regarding the last incident on October 17, 2003, the Division has concluded that your privilege to tow for the R.I.S.P. is terminated. The effective date for this termination is January 7, 2004." The State Police proceeded to afford Plaintiff greater protections than contractually required by the Tow Policy, giving the Plaintiff the opportunity to present its position in person at a meeting on March 17, 2004. Thus, it is clear to this Court that the State Police did not breach its contractual duties in making the determination to terminate Sterry Street from the Tow List.
Moreover, this Court finds that Plaintiff's failure to report a change in personnel as required by Section IV of the Tow Policy cannot be excused on the basis that the Plaintiff did not intend for Allard to respond to police calls. According to the express provisions of the Tow Policy, it is the tow company's responsibility to inform the State Police of any change in personnel. If Plaintiff's interpretation of Section IV were correct then a tow company could fail to report any changes it made in equipment or personnel and then claim that such a report was not necessary because the change would not affect the tow company's responsibilities to the State Police. This is clearly not what was intended by the provisions of the Tow Policy and is contrary to the plain language of Section IV. Additionally, under the Tow Policy, the State Police possesses the authority to suspend or remove a tow company if it believes that the tow company "may tarnish its reputation" and/or for the "public interest," further demonstrating that the provisions of Section IV are to be interpreted broadly and that the State Police retain wide discretion in making determinations regarding suspension and/or termination from the Tow Lists. Consequently, this Court finds that the State Police acted in total compliance with the provisions of the Tow Policy and did not breach any contractual obligations in making the decision to remove Sterry Street from the Tow Lists.
 Preemption
Finally, Plaintiff argues that the Tow Service Policy is legally preempted because it invades a field that the state has intentionally occupied through the Public Utilities Commission and the Division of Public Utilities (hereinafter collectively referred to as "PUC"). It is Plaintiff's contention that the Tow Service Policy of the State Police is unlawful because it purports to limit the availability of towing services to only those drive away tow operators who comply with its provisions, thereby invading a field over which the PUC has exclusive authority pursuant to the Towing Storage Act.
Preemption generally refers to the dominance of Federal law over State law under the U.S. Constitution's Supremacy Clause. Verizon v. R.I.Public Utilities Comm'n, 822 A.2d 187, 192 (R.I. 2003) "The preemption doctrine encompasses three types of preemption: (1) express preemption, (2) field preemption, and (3) conflict preemption." Id. (citing Shaw v.Delta Airlines, Inc., 463 U.S. 85, 95-96, 103 S. Ct. 2890, 2899-900,77 L. Ed. 2d 490, 500-01 (1983)). Addressing preemption in the context of federal and state regulations, the First Circuit has declared that field preemption is a "form of implied preemption [that] applies only when a federal regulatory scheme is so pervasive as to create the inference that Congress did not intend for the states to pass supplemental law in that area. Pharm. Research Mfrs. of Am. v. Concannon, 249 F.3d 66, 75 (1st Cir. 2001) (citing Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98,120 L. Ed. 2d 73, 112 S. Ct. 2374 (1992)).
In Town of Gloucester v. R.I. Solid Waste Management Corp., 390 A.2d 348,120 R.I. 606 (R.I. 1978), the Rhode Island Supreme Court had the opportunity to consider the preemption doctrine in the context of whether a local regulation was preempted by a state statute. The issue in that case was whether the Legislature in enacting the Rhode Island Solid Waste Management Corporation Act preempted the regulation of solid waste collection and disposal as to render invalid and unenforceable portions of a local ordinance which antedated the enactment of the Waste Management Act and banned the importation of solid waste materials. Id.
The questioned ordinance would have rendered illegal a private contract that had already been approved by the Rhode Island Solid Waste Management Corporation, the public instrumentality in charge of enforcing the Waste Management Act. Id. at 348, 349. The Court determined that the Waste Management Act preempted the local ordinance, stating that "the Legislature created and established the Corporation as a public instrumentality; empowered it to exercise all the powers, authorities and rights that might be necessary to a proper performance of its assigned functions; and directed it to implement its programs through contractual arrangements with private industry to the greatest degree possible." Id.
at 349. In reaching its decision, the Court declared as follows:
 "It is undisputed that a municipal ordinance in direct and material conflict with a state law of general character or statewide concern is invalid, and that whether the two so conflict depends on what the Legislature intended when it enacted the statute." Id. (citing Berberian v. Housing Authority, 112 R.I. 771, 775, 315 A.2d 747, 749-50 (1974)) (internal citations omitted).
Thus, in making a determination in the instant case, this Court looks to the Legislature's intent in enacting the Towing Storage Act.
Pursuant to The Towing Storage Act, the PUC has the authority to supervise, regulate and enforce statutory provisions governing the conduct of drive away tow operations. G.L. 1956 § 39-12.1-15. While Plaintiff is correct in its assertion that the PUC regulates tow operators through certificates of public convenience and necessity, the PUC has never sought to regulate or administer police tow lists. InSterry Street Towing, Inc. v. Division of Public Utlities and Carriers,
2003 WL 2389861 (R.I. Super. Sept. 18, 2003), the court considered Sterry Street's administrative appeal of overcharges and a $1,000.00 fine. In affirming, Justice Thompson wrote: "the purpose of the Act is to assure the owners of non-consensually towed vehicles of due process of law through the implementation of certain procedures and the establishment of set rates for services. § 39-12.1-1. Towing-storage operators wishing to be considered for police directed tows must obtain a certificate of public convenience and necessity." Id. at 2-3. It is only after a towing company has obtained PUC certification that those wishing to be considered for police tows can apply to police departments. There is no question that the State Police have set high standards of conduct and compliance in selecting who is permitted to tow vehicles on their behalf. Nothing in the Act prohibits the State Police from exercising its discretion to be more restrictive, and select from among certificated towers those who meet the specific standards of the State Police and the public it serves. Additionally, in contrast to the ordinance in Town ofGloucester, here the State Police standards further the purpose behind the Towing Storage Act, by providing greater assurance to the owners of non-consensually towed vehicles that those conducting police directed tows meet high standards of conduct. Consequently, this Court finds Plaintiff's preemption argument to be without merit.
 Conclusion
For the foregoing reasons, this Court denies the Plaintiff's request for declaratory and injunctive relief.
Counsel shall prepare a judgment for entry in conformity with this decision.