**UNITED STATES of America, Appellee,**

v.

**William A. YATES, II, Defendant, Appellant.**

No. 91–1778.

United States Court of Appeals, First Circuit.

Heard Feb. 3, 1992.

Decided Aug. 17, 1992.

**2**

Deirdre L. Thurber, New York City, by Appointment of the Court, for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., Augusta, Me., and Jonathan R. Chapman, Asst. U.S. Atty., Portland, Me., were on brief, for U.S.

Before CYR, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

CAMPBELL, Senior Circuit Judge.

Appellant William A. Yates, II, (Yates) pled guilty in the United States District Court for the District of Maine to a one count information charging him with unauthorized use of credit cards in violation of 18 U.S.C. §§ 1029(a)(2) and 1029(b)(1). He was sentenced to 30 months of incarceration. On appeal, Yates challenges the district court's calculation of his sentence under the United States Sentencing Guidelines. He complains of a two level increase for obstruction of justice under U.S.S.G. § 3C1.1; a two level increase for possession of a loaded firearm under U.S.S.G. § 5K2.0; and an assessment of 13 criminal history points resulting in a criminal histo-

ry category of VI. While otherwise affirming, we agree with Yates that the obstruction of justice increase was improper, and remand for resentencing.

*Background*

We draw the facts from the Presentence Investigation Report (PSI Report) and the transcript of the sentencing hearing. *United States v. Connell,* 960 F.2d 191 (1st Cir.1992); *United States v. García,* 954 F.2d 12, 14 (1st Cir.1992); *United States v. Dietz,* 950 F.2d 50, 51 (1st Cir.1991).

On November 8, 1990, the New Hampshire residence of Mark Watkins (Watkins) was burglarized. Among the items stolen were several credit cards; a Colt .45 with ammunition; a lap top computer; a camera; jewelry and compact discs. The following day the New Hampshire Police chased a stolen automobile driven by Yates and his girlfriend Kathie Guilmette. During the chase, Yates and Guilmette threw some of the stolen items out the car's window. The police discontinued pursuit because of hazardous driving conditions. With the exception of the credit cards and the gun and ammunition, the police recovered most of the items stolen from Watkins's residence.

On November 21, 1990, Yates and Guilmette were involved in yet another high speed chase, this time in Massachusetts. The chase began when a Massachusetts state trooper tried to stop a speeding vehicle driven by Yates, Guilmette and a third passenger. The pursuit went eastbound from route 495 to route 114 in the Lawrence/Lowell area in Massachusetts. While trying to elude the police, the fleeing car hit two other vehicles injuring one of the drivers. The police stopped the fleeing car, but Yates and Guilmette managed to escape on foot. The Massachusetts state trooper identified Yates as the driver of the fleeing car at a photographic lineup.

After an extensive investigation, Maine police officers determined that a man and a woman matching the description of Yates and Guilmette given by New Hampshire police were registered under the name Stachulski at a motel in Portland, Maine. The Maine Police arrested Yates and Guilmette

there on December 2, 1990. While searching the motel room, police officers found Watkins's credit cards as well as checks and social security cards. They also seized drugs and the Colt .45 stolen from Watkins's residence. The Colt was discovered to be loaded.

Further investigation revealed that between November 14, 1990 and November 23, 1990, Yates and Guilmette used three stolen credit cards to make purchases valued at $1,999.74. The cards were a Visa card in the name of Christine Stachulski, a Sears card in the name of Watkins, and a Mastercard also in the name Watkins.

When Yates was arrested in Portland on December 2, 1990, he told police officers that his name was William Alan Stickles. His companion Guilmette also provided a false name, but shortly thereafter revealed her true identity. Yates was taken to the Cumberland County jail, where he insisted he was Stickles. Yates gave as date of birth September 29, 1961 and a social security number of 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. This information was also false.

When Portland Police Detective Peter Baleyco became suspicious of the identity of the man he had just apprehended, he secured the help of United States Secret Service[1] Agent Philip Paradis for checking out the true identity of the man claiming to be Stickles. On December 3, 1990, Paradis began an investigation on unauthorized use and possession of a social security card. He learned that the social security number provided by Yates belonged to a ten year old boy who lived in New Hampshire, and that no social security number had been issued to a William Alan Stickles. On December 5, 1990, a federal grand jury indicted Yates under the name of Stickles—his true identity being unknown—for giving a false social security number. The Stickles name was also used in various official acts undertaken in connection with his apprehension and custody, such as entering his record in the State Bureau of Identification

system, and in the Cumberland County Jail records.

Meanwhile, Paradis had forwarded Yates' fingerprints to the Secret Service laboratory. On December 6, 1990, Paradis learned that the fingerprints belonged to Yates. The investigation further revealed that Yates was wanted for a probation violation in New Hampshire. On December 7, 1990, Paradis visited Yates in prison to gather additional information. By this date Paradis already knew Yates' true identity and Yates acknowledged his true name.

At some point between January 1 and January 9, 1991, Assistant U.S. Attorney Jonathan Chapman (Chapman) assumed control over the false social security number case. He determined that all the evidence obtained when Yates was arrested on December 2nd would be inadmissible because it had been illegally seized. Chapman then asked Paradis if it was possible to find a charge to bring against Yates that could be developed independently of the illegally seized evidence. Paradis stated that there was independent evidence to charge Yates with unauthorized use of credit cards. This evidence consisted mainly of the information provided both by the Massachusetts and New Hampshire Police, the victims of the credit card thefts and the credit card companies.

On February 11, 1991, Yates agreed to waive indictment by the grand jury. He pled guilty to an Information charging him with unlawful use of access devices in violation of 18 U.S.C. §§ 1029(a)(2) and 1029(b)(1). Yates entered his plea on March 1, 1991. The district court ordered the preparation of a PSI Report and a sentencing hearing was scheduled for July 5, 1991.

The district court found that the guideline for the offense of conviction was U.S.S.G. § 2F1.1(b)(1)(A) [Fraud and Deceit of $2,000 or less] which provides a Base Offense Level (BOL) of six. The court increased the BOL by two levels under

---

**1.** The United States Secret Service has jurisdiction to investigate criminal violations relating to

access devices pursuant to 18 U.S.C. § 1029.

U.S.S.G. § 2F1.1(b)(2) because it concluded that the offense conduct involved more than minimal planning. The government sought a two level increase under U.S.S.G. § 3C1.2 for reckless endangerment on the basis that the November 21 flight posed a substantial risk of death or serious bodily injury. The district court declined to impose this increase because it was not persuaded that the requisite nexus existed between the crime of conviction and Yates' flight. The court nevertheless departed upwards by two levels under U.S.S.G. § 5K2.0 on the basis of Yates' possession of a loaded firearm during a portion of the offense conduct.

Although the government did not seek an obstruction of justice enhancement under U.S.S.G. § 3C1.1, the district court imposed a two level increase under that section of the guidelines. The court found that Yates falsely represented his identity to the arresting officers, and in doing so, significantly obstructed and impeded the officers in properly identifying him and completing their responsibilities with respect to documenting the arrest. Two levels were reduced under U.S.S.G. § 3E1.1(a) for acceptance of responsibility.

This calculation lead to a BOL of ten. The court assessed 13 criminal history points and determined that the criminal history category was VI. With a BOL of ten and a criminal history category of VI, the sentencing table provides a sentencing range of 24 to 30 months. The district court imposed 30 months. This appeal followed.

## I.

▮ Yates claims the district court erred in applying a two level increase to his BOL for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. We review that issue *de novo*. *United States v. Manning*, 955 F.2d 770 (1st Cir.1992); *United States v. Bell*, 953 F.2d 6 (1st Cir.1992); *United States v. Moreno*, 947 F.2d 7, 10 (1st Cir.1991). We will uphold the district court's sentence so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous. *United States*

*v. Pilgrim Market Corp.*, 944 F.2d 14, 16 (1st Cir.1991); *United States v. Akitoye*, 923 F.2d 221, 228–229 (1st Cir.1991). In conducting that review, we apply the guidelines in effect on the date of sentencing. *Bell*, 953 F.2d at 7 (citing *United States v. Cousens*, 942 F.2d 800, 802 n. 1 (1st Cir. 1991) (absent *ex post facto* problem, sentence is reviewed under guidelines in effect at time of sentencing, not commission of offense)). The district court sentenced Yates on July 5, 1991. The applicable guideline then in effect was U.S.S.G. § 3C1.1, as amended through November 1, 1990. This provided:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by two levels.

Application Note 4(a) in the then applicable Commentary to § 3C1.1 stated that providing a false name *did not* warrant the two level increase "except where such conduct actually resulted in a significant hindrance to the investigation or prosecution *of the instant offense.*" (Emphasis supplied.) *See United States v. Barry*, 938 F.2d 1327, 1333 (D.C.Cir.1991).

If we limit ourselves to the text of § 3C1.1 alone, it can be argued that by furnishing a false name when arrested, Yates "willfully … attempted to obstruct … justice during the investigation" of the instant (i.e. credit card) offense, as *all* potentially chargeable offenses were, in some sense, under investigation at the time he was arrested, even though a particularized investigation of the credit card offense had yet to begin. Application Note 4(a), however, adds another wrinkle to the analysis. Note 4(a) requires a showing that the giving of the false name "actually resulted in a significant hindrance to the investigation or prosecution of the instant offense." While Yates' false representations to the arresting officers can be said to have actually and significantly hindered the investigation of the charge involving the false social security number, that charge was dropped late in 1990. Only thereafter was

the "instant offense" involving the unauthorized use of the credit cards, specifically investigated and charged. *United States v. Barry,* 938 F.2d at 1333. By then, Yates' identity was well known, and there is no evidence whatever that his previous giving of the false name actually hindered the investigation or prosecution of the instant offense. Indeed, the government's principal witness, Paradis, testified to the contrary:

Q. [by Assistant U.S. Attorney Chapman] All right. Now, would you state for the Court how it is that act on Mr. Yates' part of giving a false name and social security number affected your investigations?

A. [by S/A Paradis] The initial investigation as to providing false social security number was hindered due to the fact that he was not providing accurate information.

THE COURT: What happened was you had a false identification and you had reason to suspect that he was not who he said he was, you had to undertake additional investigation effort to find out who he was?

A. Yes.

THE COURT: Next question.

Q. How about with respect to the present charge?

A. *It could not hinder the current investigation being a credit card.* (Emphasis supplied.)

Q. Why is that?

A. Due to the fact that I was aware of his identity at the time, and I had a body in hand, I was able to identify through photo line ups who the individual was using the cards.

The government contends that it is irrelevant for purposes of applying U.S.S.G. § 3C1.1 that at the time of the obstructive conduct, the authorities were actually investigating an offense other than the offense of conviction. But as pointed out above, Application note 4(a)—which was not in existence when *Barry, see* 938 F.2d at 1335, was decided—plainly states that providing a false name does not warrant the enhancement unless it *actually results* in a significant hindrance to the investigation or prosecution. Thus, even assuming that Yates attempted to throw off the police in their investigation both of the false social security number offense and the fraudulent use of the credit cards, all factors, including the testimony of the main investigative officer, unequivocally establish that the false name did not *actually* hinder the investigation of the "instant" credit card offense. We hold, therefore, that the two level increase for obstruction of justice was unwarranted. To affirm would require either a tortured reading of the commentary or our ignoring it altogether. To be sure, courts have on occasion refused to follow the commentary,[2] and we do not foreclose the possibility of doing likewise in some particularly compelling matter. But we think the guidelines are complicated enough without our ordinarily proceeding along such a path. The Sentencing Commission itself is best situated to fine tune issues of this nature in its periodic review of the guidelines and commentary. In the meantime, courts and parties should be able to rely upon the commentary, at least in the vast generality of cases. Accordingly, without doubting the common sense of the district court's ruling, we are constrained to hold that it was error to add a two level increase for obstruction of justice.

## II.

Next, Yates challenges the district court's upward departure by two levels under U.S.S.G. § 5K2.0 on two grounds:

---

**2.** *Cf. United States v. Stinson,* 957 F.2d 813, 915 (11th Cir.1992) (although commentary should generally be regarded as persuasive, it is not binding; *United States v. Elmendorf,* 945 F.2d 989, 997 (7th Cir.1991) (quoting *United States v. Pinto,* 875 F.2d 143, 144 (7th Cir.1989) (application notes are not binding law, they are only advisory commentary to assist in the application of the statute)); and *compare United States v. Madera–Gallegos,* 945 F.2d 264, 267 (9th Cir. 1991) (citing *United States v. Anderson,* 942 F.2d 606 (9th Cir.1991) (en banc) (courts should always consider the commentary and should construe a guideline and its commentary so as to be consistent, if that is possible.)

first, that the district court failed to give him notice of its intention to depart upwards as required by *Burns v. United States*, —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991);[3] and second, that the departure was a violation of the guidelines. We consider these arguments *seriatim*.

■ Yates' first argument need not occupy us for long. The record flatly refutes Yates' claim that he was not notified of the district court's intention to depart upwards. The supplemental report prepared by the presentence investigator on June 28, 1991 specified as a second reason for departing upwards under U.S.S.G. § 5K2.0 that Yates was in possession of a loaded firearm. This constituted the notice required by *Burns*.

As for the substantive justification for departure, the district court made the following finding:

... The basis of that departure is this defendant's possession of a firearm, loaded, when it was seized during a portion of the offense conduct. This firearm was taken apparently at the same time the access devices [credit cards] that are the subject of the offense of conviction were taken by larsonist [sic], and with that firearm were taken 75 rounds of ammunition. The court infers from that, that it was taken definitely for a purpose. The amount of ammunition taken with it indicated it was intending to keep it for a considerable period of time and it was anticipated by the defendant in taking it that there would be need for considerable use.

The court notes that by its own admission during one or the other of his instances in November of 1990 when he fled from the police officers, that he has told Mr. Paradis and others the reason for that was that he realized his possession of the firearm would cause him additional legal difficulties. It was a serious aspect of his criminal conduct. Then he

continued to hold it, he did not discard it or get rid of it. And I find from all of the facts in this case that it is not improbable that he was keeping that weapon for the purpose of whatever assistance it might afford him in a confrontation with officers, if he should have such confrontation under circumstances where he could gain access to the weapon and, as such, it did pose, in his possession, a significant indeed frightening danger to the public welfare and safety.

I am satisfied that because of the nature of this offense, the guideline provisions make no, provide for no consideration of possession of a firearm as an offense characteristic and that as such it is appropriate basis under 5K2.0 for the Court to depart upwards in recognition of the serious aspect of the offense behavior and I will depart upward by 2 levels ...

Under U.S.S.G. § 5K2.0 the sentencing court may impose a sentence outside the range established by the applicable guideline if the court finds

that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described.

In this case, the aggravating circumstance was the alleged possession of a loaded firearm. We review the district court's departure under the three-step process set forth in *United States v. Diaz–Villafañe*, 874 F.2d 43, 49 (1st Cir.1989), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

■ First, we consider if the offense was sufficiently unusual to warrant departure. Since departures from the guidelines are meant to be the exception, not the rule, *Diaz–Villafañe*, 874 F.2d at 52, there must

---

**3.** In *Burns*, 111 S.Ct. at 2187, the Supreme Court held that:

... before the district court can depart upward on a ground not specified as a ground for upward departure either in the presentence report or in a prehearing submission by

the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such ruling. This notice must specifically identify the ground on which the district court is contemplating an upward departure. (footnote omitted).

be "... something 'special' about a given offender, or the accouterments of the crime committed, which distinguishes the case from the mine-run for that offense." *United States v. Aguilar–Pena*, 887 F.2d 347, 350 (1st Cir.1989). In this case, the district court determined that the possession of a loaded firearm in close conjunction with events surrounding the offense of conviction was sufficiently unusual to warrant departure. We agree. The guideline for the offense of conviction—U.S.S.G. § 2F1.1(b)(1)(A) [Fraud and Deceit of $2,000 or less]—does not list or mention as a relevant factor the possession or use of a firearm as a characteristic of that offense. This is understandable given the nonviolent characteristics of the offense. Clearly the presence of the loaded pistol was a circumstance beyond the "mine run" of cases involving misuse of a credit card.

■ Next, we consider if the court's findings relative to the firearm were supported by the evidence. We must accept these, of course, unless they are clearly erroneous. *United States v. Mocciola*, 891 F.2d 13, 17 (1st Cir.1989). The court found that Yates was in possession of the loaded firearm at the time he possessed the subject credit cards. The district court also found that Yates kept the weapon for

> whatever assistance it might afford him in a confrontation with officers, if he should have such confrontation under circumstances where he could gain access to the weapon and, as such, it did pose, in his possession, a significant indeed frightening danger to the public welfare and safety.

Yates contends there was insufficient evidence that he used or even possessed the firearm in the course of the credit card offense. His mere possession of the loaded gun when arrested on December 2, 1990, a week after the period—November 14 through 23—of the credit card crimes, was, he says insufficient proof. However, as the district court found and the government points out, there was other evidence from which to conclude that Yates held the loaded gun as insurance within the same period that he possessed and misused the stolen credit cards. He had stolen the weapon, the ammunition and the credit cards at the same time and from the same house. He used one of the cards to rent the automobile involved in the high speed chase in Massachusetts and he admitted to having the weapon with him during the chase. When arrested he still had both the cards and the loaded weapon. These and other circumstances mentioned by the court permitted the inference of a significant association between the loaded weapon and the misuse of the stolen cards. There is no necessity of proof that the gun was actually used in the credit card offense. *Compare United States v. Ruiz*, 905 F.2d 499, 508 (1st Cir.1990).

### III.

■ Finally, Yates claims the court erred in determining the number of criminal history points leading to a criminal history category of VI. We find no error.

The PSI report indicates that Yates has an extensive criminal record. Between October 16, 1979 and October 26, 1979 Yates burglarized several residences in New Hampshire. All these burglaries occurred within Merrimack County, with the exception of one committed on October 23, 1979 in Hillsborough County. The district court concluded that although sentence was imposed for all burglaries on the same day, the burglary of October 23, 1979 involved different conduct in relation to the other burglaries and therefore was not a related case for purposes of U.S.S.G. § 4A1.1(a), (b) and (c). The court ruled that the October 23, 1979 burglary was an unrelated case to be counted separately and added three criminal history points.

Yates argued that the district court erred in adding three criminal history points for the October 23, 1979 burglary because that burglary was a part of a common scheme. According to Yates, although this burglary occurred in a different county, a look at a New Hampshire map indicates that all the burglaries occurred within a small geographical area. Therefore, he was entitled to have the court consider that burglary as a related case and be treated as one sentence for sentencing under U.S.S.G. § 4A1.1(a), (b) and (c). We disagree.

Under U.S.S.G. § 4A1.2(a)(2), prior sentences imposed on related cases are to be treated as one sentence for purposes of the criminal history. Application note 3 explains what constitutes "related cases:"

Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing. The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger he represents to the public. For example, if the defendant commits a number of offenses on independent occasions separated by arrests, and the resulting criminal cases are consolidated and result in a combined sentence of eight years, counting merely three points for this factor will not adequately reflect the seriousness of the defendant's criminal history or the frequency with which he commits crimes. In such circumstances, the court should consider whether departure is warranted. *See* § 4A1.3.

The district court awarded three points for the first of eight charges for which Yates was sentenced in Strafford County, New Hampshire on June 6, 1980. The court assigned no points for any of the seven other sentences he received in the same court on the same day. Similarly, the court assigned no criminal history points for any of the ten sentences Yates received in Merrimack County, New Hampshire also on June 6, 1980. Thus, Yates received only three criminal history points for a total of eighteen convictions. In the circumstances here, the court's determination relative to Yates' criminal history was well founded and fully justified.

*We affirm the sentence in all respects except as to the two level increase for obstruction of justice. The sentence is vacated and the case remanded for further proceedings in accordance herewith.*