Spacetown Auto Body v. Derry        CV-95-186-SD  02/14/96

UNITED STATES DISTRICT COURT FOR THE

                          DISTRICT OF NEW HAMPSHIRE


Spacetown Auto Body, Inc.

     v.                                          Civil No. 95-186-SD

Town of Derry, NH;
Derry Police Department;
Edward B. Garone, individually
 and in his capacity as Chief of
 Police of the Town of Derry



                              O R D E R


     In this civil rights action, plaintiff Spacetown Auto Body,

Inc., asserts, inter alia, assorted violations of its property

rights, due process rights, and right to equal protection under

the laws and Constitution of the United States against defendants

Town of Derry, the Derry Police Department, and Edward Garone,

the Chief of Police for the Town of Derry.  It further asserts

that Chief Garone has violated his statutory and common law

duties owed to the plaintiff.

     Presently before the court is defendants' motion to dismiss

all of the claims alleged in plaintiff's amended complaint, to

which plaintiff objects.[1]

_____

     [1]Defendants previously filed a motion to dismiss the
original complaint.  Since the original complaint has been
superseded by an amended complaint, and defendants have moved to

## Background[2]

Spacetown Auto Body, Inc., has engaged in the business of auto and truck towing and repair in the Town of Derry for over twenty years. Amended Complaint ¶ 7. Spacetown owns two trucks and a car carrier that enable it to respond to police calls, arrive at an accident scene, retrieve vehicles, and repair the vehicles at its facility if so required by a vehicle owner. Id. ¶ 8. Fees for "towing, storage and/or repair of such vehicles constitute a major portion" of the gross income for Spacetown. Id.

For many years, "the Derry Police Department, in accord with policies established by the town legislative body, maintained a so-called 'towing list' or 'wrecker list'" developed so that Derry garages would have "equal opportunities for Derry towing jobs from [automobile] accidents." Id. ¶ 9. The alleged purpose of the "towing list" is to prevent towing companies from rushing to an accident scene and squabbling over who should procure the work there. Id. Spacetown alleges that Chief Garone, as part of a campaign to financially damage the plaintiff, has instituted

_____

dismiss such complaint as amended, their original motion (document 2) is herewith denied as moot.

[2]The following facts are taken from Spacetown's complaint and are assumed to be true for the purposes of ruling on the motion sub judice.

his own towing policies in violation of Derry's policies, rules, and regulations.  Id. ¶ 18.

Plaintiff further alleges that if garages are "treated fairly and in an equal manner by the police, any garage can expect that at least 50% of its 'police requested' towing calls will result in repair work," id. ¶ 19; however, as a direct result of the police department's conduct over the past year, Spacetown repaired only one of the vehicles in the 29 accident tows where the police called the plaintiff, id.

Discussion

1.  Motion to Dismiss Standard

In assessing plaintiff's complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., the court takes all of plaintiff's factual averments as true and indulges every reasonable inference in plaintiff's favor.  Talbott v. C.R. Bard, Inc., 63 F.3d 25, 27 (1st Cir. 1995) (citing Garita Hotel Ltd. Partnership v. Ponce Fed. Bank F.S.B., 958 F.2d 15, 17 (1st Cir. 1992); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989)). This deference toward plaintiffs is "restricted by requiring that each general allegation be supported by a specific factual basis. The pleadings are not sufficient where the plaintiff rests on . . . unsubstantiated conclusions."  Fleming v. Lind-Waldock &

3

Co., 922 F.2d 20, 23 (1st Cir. 1990) (citing Dewey v. University of N.H., 694 F.2d 1, 3 (1st Cir. 1982), cert denied., 461 U.S. 944 (1983)).

Though it has been firmly established that there is no heightened pleading standard for civil rights claims, "even the minimal requirements of notice pleading . . . require [a plaintiff] to plead sufficient facts in each count so that 'each general allegation [is] supported by a specific factual basis.'" Penny v. Town of Middleton, 888 F. Supp. 332, 337 (D.N.H 1994) (quoting Fleming, supra, 922 F.2d at 23, and citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, ___, 113 S. Ct. 1160, 1163 (1993)).

Whether a motion to dismiss will be successful is not dependant upon the likelihood of success on the merits, but rather upon whether a plaintiff is entitled to offer evidence to support his or her claim. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Doukas v. Metropolitan Life Ins. Co., 882 F.Supp. 1197, 1198 (D.N.H. 1995).

2.  Derry Police Department

Plaintiff asserts in its amended complaint that the Derry Police Department can be dismissed as a defendant.  Plaintiff's Objection to Defendants' Motion to Dismiss Plaintiff's Amended

4

Complaint at 1. Accordingly, the court dismisses the Derry Police Department as a party defendant to this suit and orders its name stricken from the caption in all future pleadings.

3. "Official Capacity" Claims

In Counts I and III, plaintiff asserts claims against Chief Garone acting in his "official capacity." Amended Complaint ¶¶ 23, 29. Defendants move to dismiss same as duplicative.

In general, plaintiff is not permitted to assert identical claims against both the governmental actors in their "official capacities" and the governmental entity itself. See Northeast Fed. Credit Union v. Neves, 837 F.2d 531, 533 (1st Cir. 1988) (where, as here, all claims are made against government official acting purely in representative role, suit must be regarded as one against sovereign). Official capacity claims are not recognized because "an official capacity suit is, in reality, a suit against the governmental entity, not against the governmental actor." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 705 (1st Cir. 1993); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978).

Plaintiff acknowledges that similar claims against the chief of police acting in his official capacity and against the Town of

5

Derry could be duplicative and a cause for jury confusion. Plaintiff's Objection at 2. Despite this admission, plaintiff requests that the court "defer ruling on the dismissal of claims against the Chief of Police acting in his official capacity until a final pre-trial conference so that the specific claims against the chief's specific conduct in his official capacity can be sorted out." Id. at 3.[3]

The court finds it unnecessary to separate claims against the police chief acting in his official capacity from those asserted against the Town of Derry. Plaintiff's claims against Chief Garone in his official capacity allegedly arise from his institution of certain policies that unfairly treat the plaintiff. Amended Complaint ¶ 18. Similarly, plaintiff alleges claims against the Town of Derry for refusing to stop the alleged

---

[3]Plaintiff provides two reasons for this request:

> until discovery is completed, the full range of the duplication, if any, cannot be known, nor can it be ascertained whether the actions of the chief are within the parameter of his employment and/or involve conduct proscribed by the NH criminal code and/or be labeled as ultra vires. Furthermore, it is possible that different insurance coverages apply depending on precisely what it is the Chief did or did not do.

Plaintiff's Objection ¶ 4.

policies implemented by the chief of police, "thereby making the practices the official policy of the Town of Derry."  Id. ¶ 50.

Because the court will consider all "official capacity" claims to be claims against the Town of Derry, the court will dismiss Counts I and III against Chief Garone acting in his "official capacity" as duplicative of plaintiff's claims asserted in Count X against the Town of Derry.

4.  Section 1983 Claims

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, ___ U.S. ___, ___, 114 S. Ct. 807, 811 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, (1979)).[4]  When reviewing a section 1983 claim, the court's "initial inquiry is (1) whether the conduct complained of was committed by a person acting under the color of

_____

[4]In relevant part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

7

state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Voutour v. Vitale, 761 F.2d 812, 819 (1st Cir. 1985) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330 (1986)), cert. denied sub nom., Town of Saugus v. Voutour, 474 U.S. 1100 (1986).[5]

a.  Equal Protection

In Counts I and X plaintiff asserts a violation of its equal protection under the law against, respectively, Chief Garone acting in his individual capacity and the Town of Derry.

When considering equal protection claims:

> Liability in the instant type of equal
> protection case should depend on proof that
> (1) the person, compared with others
> similarly situated, was selectively treated;
> and
> (2) that such selective treatment was based
> on impermissible considerations such as race,
> religion, intent to inhibit or punish the
> exercise of constitutional rights, or
> malicious or bad faith intent to injure a
> person.

Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995) (citing Yerardi's Moody St. Restaurant & Lounge, Inc. v. Board of

_____

[5]Defendants concede that "[t]he 'color of state law' issue is not in controversy here . . . ." Defendants' Memorandum of Law at 9.

Selectmen, 878 F.2d 16, 21 (1st Cir. 1989) (Yerardi's I) (citing LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980), cert. denied, 450 U.S. 959 (1981))).

"Plaintiffs claiming an equal protection violation must first 'identify and relate specific instances where persons situated similarly "in all relevant aspects" were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were "singled . . . out for unlawful oppression."'" Id. at 910 (citing Dartmouth Review, supra, 889 F.2d at 19) (other citations omitted in Rubinovitz). "[I]n the absence of invidious discrimination or the abuse of a fundamental right,[6] a party may establish an equal protection violation with evidence of bad faith or malicious intent to injure." Id. at 911 (citing Yerardi's I, supra, 878 F.2d at 21). The First Circuit, however, rarely finds this type of behavior. Id. (citing PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 33 (1st Cir. 1991) (bad-faith or malicious-intent-to-injure cases are infrequent) (citation omitted). Additionally, "the malice/bad faith standard should be scrupulously met." Yerardi's II, supra note 6, 932 F.2d at 94 (quoting LeClair, supra, 627 F.2d at 611).

_____

[6]"[A]s a general matter, the equal protection clause serves to protect suspect classes and fundamental interests from inequitable treatment." Yerardi's Moody St. Restaurant & Lounge, Inc. v. Board of Selectmen, 932 F.2d 89, 94 (1st Cir. 1991) (Yerardi's II) (citing LeClair, supra, 627 F.2d at 611).

9

Spacetown has not alleged that it has been subjected to inequitable treatment because of its membership in a suspect class, nor that it has been denied a fundamental right under the Equal Protection Clause.  Thus, to satisfy the standard stated by Rubinovitz and Yerardi's I, this court would need to infer from the given facts that defendants selectively treated plaintiff for impermissible reasons, such as to maliciously injure Spacetown in order to put it out of business, "because of personal animosity towards Spacetown's president . . . or because of other considerations of importance to the Chief of Police."  Amended Complaint ¶ 17.

### (1) Chief Garone (Count II)

At this stage of the litigation, the court must accept as true that Spacetown was treated differently from at least one towing company, Londonderry BP, and the alleged facts could support the inference that the plaintiff was "singled out" for unlawful oppression.  See Rubinovitz, supra, 60 F.3d at 909-10; see also Dartmouth Review, supra, 889 F.2d at 19.  In the view of the court, Spacetown alleges many facts allowing the inference that it was selectively treated.  See Amended Complaint ¶¶ 13, 14, 18A-R, 19.  The alleged facts support the inference that Chief Garone devised and set into effect a campaign to put the

10

class of non-Londonderry BP towing companies out of business by referring a good portion of towing business to Londonderry BP. See Rubinovitz, supra, 60 F.3d at 909-10.

Defendants compare the case at hand to Coyne v. City of Somerville, 972 F.2d 440 (1st Cir. 1992), arguing that, as in Coyne, plaintiff merely claims to be a "victim of unlawful favoritism and discrimination," and does not meet the requirements of an equal protection claim. Motion to Dismiss Amended Complaint at 18. A comparison of Spacetown's assertions with the facts presented in Coyne reveals why Spacetown can proceed with its equal protection claim where Coyne's claims were dismissed.

In his equal protection claims, Coyne alleged that defendants discriminated against him and gave jobs to friends, but did not anywhere in his complaint allege that defendants acted with "'malice or bad faith intent to injure' the class of non-cronies among whom plaintiff count[ed] himself."[7] Coyne, supra, 972 F.2d at 445 (quoting Yerardi's II, supra note 6, 932 F.2d at 92). In contrast, Spacetown alleges,

_____

[7]More precisely, the defendants in Coyne allegedly passed over plaintiff for promotions for which he was qualified on four occasions in favor of those whom plaintiff characterized as the defendants' "friends, cronies and others in favorable relationships." Coyne, supra, 972 F.2d at 444.

11

> [I]t has become apparent that it is the intention of the Chief to put the plaintiff company [and at least one other garage] out of business, either because of personal animosity towards its president or in retaliation for the plaintiff being instrumental in trying to reduce the number of listings Fortier Enterprises has on the towing list or because of other considerations of importance to the Chief of Police.

Amended Complaint ¶ 17.

As discussed supra, a plaintiff asserting an equal protection claim must allege facts that support the inference that the defendants, at least in part, acted because of the adverse effects upon an identifiable group. Coyne, supra, 972 F.2d at 445. Plaintiff has at least alleged that defendants denied plaintiff towing jobs for malicious reasons.[8] A reasonable jury could infer from the alleged facts that Chief Garone denied business to the plaintiff by not following the "rotation list" procedures for malicious reasons, and that such malicious intent to injure could be the result of "personal

---

[8]For its equal protection claim, plaintiff cannot rely on retaliatory conduct on the part of Chief Garone as proof of discriminatory improper motive. Spacetown must allege that rooted within Chief Garone's initial instances of discrimination was a malicious intent to cause it injury. Furthermore, for reasons stated infra at part 4.b.(1), Spacetown also cannot allege that defendants are punishing it for "the exercise of constitutional rights," because the only right plaintiff has asserted is an alleged property right to conduct its business without police interference--a "right" which, under the circumstances, is not constitutionally cognizable.

animosity" or other considerations, such as his asserted desire to benefit Londonderry BP by putting other towing companies, like the plaintiff, out of business.[9]

Because this case is before the court on a motion to dismiss, the court must accept plaintiff's alleged facts as true and construe them in a light most favorable to its cause. See Garita Hotel Ltd., supra, 958 F.2d at 17. Accordingly, the court finds that plaintiff has asserted a viable claim of violation of its equal protection under the law. Accord Rubinovitz, supra, 60 F.3d at 912 (evidence that plaintiffs' water, sewer, and gas hook-ups were disconnected and contractor told by city official that plaintiffs were "bad people" and one plaintiff a "bitch" was "only barely enough" evidence of malicious intent such that the case could not be resolved at summary judgment for the defendants).

### (2) Chief Garone's Qualified Immunity

The court having found plaintiff's amended complaint to state a viable equal protection claim, Chief Garone next moves

---

[9]As evidence that Chief Garone wants to put Spacetown out of business, plaintiff offers that it is not receiving the towing calls it once received; defendant is going out of its way to call plaintiff for "undesirable" tows; and the result of this behavior has cost the plaintiff at least $500,000. Amended Complaint ¶¶ 17-18(B), 19-20.

the court to deny same due to qualified immunity.  Motion to Dismiss at 6-8.

Qualified immunity "shields public officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 530-31 (1st Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), petition for cert. filed, 64 U.S.L.W. 3511 (U.S. Jan. 19, 1996) (No. 95-1158)).  "A right is clearly established if, at the time of the alleged violation, 'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Id. at 531 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)); see also Febus-Rodriquez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994).

As discussed above, supra, part 4.a.(1), Spacetown has alleged a constitutional claim of violation of its equal protection under the law.[10]  The court next must discern whether

_____

[10]The Supreme Court has explained that "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."  Brown, supra, 68 F.3d at 531 (citing Siegert v. Gilly, 500 U.S. 226, 232 (1991)); accord Singer v. State of Me., 49 F.3d

14

the plaintiff's alleged constitutional right to be free from selective treatment, based on an impermissible consideration such as malicious intent to injure, has been "clearly established." See Brown, supra, 68 F.3d at 531.

A determination of "clearly established" is necessary.

> [I]t is not sufficient for a court to ascertain in a general sense that the alleged right existed, otherwise "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."
> . . . Accordingly, a court must determine whether an alleged right was established with sufficient particularity that a reasonable official could anticipate that his actions would violate that right.

Borucki v. Ryan, 827 F.2d 836, 838 (1st Cir. 1987) (quoting Anderson, supra, 483 U.S. at 640) (other citations omitted). See Singer, supra note 10, 49 F.3d at 845 (quoting Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992)) (citation omitted) (whether the right at issue was clearly established focuses not upon the right at its most abstract level, but at the level of its application to the specific conduct being challenged).

The court finds that it was clearly established that plaintiff had a right to be free from selective treatment based on an impermissible consideration such as malicious or bad faith

_____

837, 844 (1st Cir. 1995).

15

intent to injure a person.  See Yerardi's I, supra, 878 F.2d at 21 (citing LeClair, supra, 627 F.2d 609-10); but see Borucki, supra, 827 F.2d at 839-48 (finding that plaintiff's right to not have information from psychiatric report disseminated to the press was not "clearly established" by relevant caselaw).  A reasonable police officer should have known that conduct inspired by malicious intent that deprives a person of a constitutional right is unlawful.[11]

The court further finds and rules that plaintiff has alleged sufficient facts allowing the inference that Chief Garone violated a clearly established right of which a reasonable police officer should have known.  At this early stage, therefore, the court will not dismiss Chief Garone on the ground of qualified immunity and accordingly denies defendants' motion to dismiss plaintiff's equal protection claim against Chief Garone acting in his individual capacity (Count II).

_____

[11]Echoing the Supreme Court, this Circuit has stated that government officials should not be liable for claims equaling "bare allegations of malice." Feliciano-Angulo v. Rivera-Cruz, 858 F.2d 40, 45 (1st Cir. 1988) (citing Harlow, supra, 457 U.S. at 817-18).  Despite the "objective reasonableness standard" established in Harlow, the First Circuit has clearly recognized that "Harlow will not bar inquiry into a defendant's state of mind when the applicable law makes the defendant's state of mind (as distinct from defendant's *knowledge* of the law) an essential element of plaintiff's constitutional claim." Id. at 46; see also Broderick v. Roache, 996 F.2d 1294, 1299 (1st Cir. 1993).

16

<u>(3) Town of Derry (Count X)</u>

To ascertain whether plaintiff has asserted an equal protection claim against the Town of Derry in Count X, the court employs the standard expressed by <u>Monell</u>, <u>supra</u>, 436 U.S. at 658, and adopted by the First Circuit in <u>de Feliciano v. de Jesus</u>, 873 F.2d 447 (1st Cir.), <u>cert. denied sub nom.</u>, <u>de Feliciano v. Farm Credit Corp.</u>, 493 U.S. 850 (1989): "[A] government agency is responsible for a deprivation of a constitutional right only where (1) a constitutional harm takes place, and (2) the 'execution of a government's policy or custom . . . inflicts' that harm." <u>Id.</u> at 449 (quoting <u>Monell</u>, <u>supra</u>, 436 U.S. at 694). See <u>infra</u> part 4.b.(2) (discussing application of <u>Monell</u> standard).

Plaintiff satisfies the first requirement that "a constitutional harm take place," for plaintiff has asserted a claim of violation of its equal protection under the law. <u>See</u> <u>supra</u> part 4.a.(1) (finding that plaintiff has asserted a claim for violation of its equal protection under the law); <u>see also</u> <u>Rubinovitz</u>, <u>supra</u>, 60 F.3d at 909-10.

Plaintiff also satisfies <u>Monell</u>'s second requirement. After the Derry selectmen received notice of the police chief's alleged conduct, the town's inaction toward Chief Garone in effect made

17

the chief's alleged "policies" the official policy of the Town of Derry.  Amended Complaint ¶¶ 18, 21, 50.[12]

As plaintiff has asserted a viable equal protection claim against the Town of Derry, the court denies defendants' motion to dismiss such portion of the claims asserted in Count X.


        b.   Procedural Due Process

        The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty or property without due process of law."  U.S. CONST. amend. XIV.[13]

> "To have a property interest in a benefit, a person clearly must have more than an abstract need for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it . . . .   Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understanding that stem from an independent

---

[12]As stated by Monell, a governmental entity can be sued for constitutional deprivations "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels."  Monell, supra, 436 U.S. at 690.

[13]Despite plaintiff's reference to the Fifth Amendment in its amended complaint, "It is axiomatic that the Fifth Amendment due process clause applies only to the federal government, while the Fourteenth Amendment due process clause applies to the states."  Lyle v. Dodd, 857 F. Supp. 958, 966 (N.D. Ga. 1994) (citing Bartkus v. Illinois, 359 U.S. 121, 124 (1959)). Accordingly, plaintiff's claims will be analyzed through the lens of the Fourteenth Amendment.

18

> source such as state-law rules or
> understandings that secure certain benefits
> and that support claims of entitlement to
> those benefits."

Marrero-Garcia v. Irizarry, 33 F.3d 117, 121 (1st. Cir. 1994)

(quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972))

(ellipsis in Marrero-Garcia).  "An interest becomes a protected

property interest when recognized by state statute or legal

contract, express or implied, between the state agency and the

individual."  Id. (citing Board of Regents, supra, 408 U.S. at

577).  Thus, property interests are defined by existing rules or

understandings that stem from an independent source such as state

law.

In general, procedures do not create property interests.

See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541

(1985) (categories of substance and procedure are distinct--

property cannot be defined by the procedures provided for its

deprivation any more than life or liberty).  However,

> "property" interests subject to procedural
> due process protection are not limited by a
> few rigid, technical forms.  Rather,
> "property" denotes a broad range of interests
> that are secured by "existing rules or
> understandings" . . . .  A person's interest
> in a benefit is a "property" interest for due
> process purposes if there are such rules or
> mutually explicit understandings that support
> his claim of entitlement to the benefit and
> that he may invoke at a hearing.

19

Perry v. Sindermann, 408 U.S. 593, 601 (1972) (citing Board of Regents, supra, 408 U.S. at 571-72, 577); see also Lowe v. Scott, 959 F.2d 323, 335 (1st Cir. 1992).

### (1) Chief Garone (Count IV)

In Count IV, Spacetown claims that Chief Garone, in his individual capacity, has deprived Spacetown of its property right to conduct business without police interference. Amended Complaint ¶ 32. Plaintiff asserts that this property right exists because: (1) plaintiff derives a substantial percentage of its business from "police ordered tows"; (2) the Derry Legislature and the Police Chief have created rules and policies regarding towing automobiles from accident scenes; and (3) towing businesses must follow the Town's rules and policies regarding towing companies (particularly forbidding towing companies from arriving at an accident scene unless called by the police). Plaintiff's Objection at 2-3.

Despite Spacetown's assertion that the combination of the aforestated facts creates a property interest--the right to practice business without police interference--protected by the Due Process Clause of the Constitution, the key question is more fundamental: Do the aforelisted policies and procedures regarding "towing lists" create a property interest for plaintiff

20

<u>at all</u>?  If Spacetown does not have a property interest in being on the list at all, then Chief Garone's alleged failure to rigidly apply the Town's rotation policy cannot rise to the level of a property interest deprivation.

A majority of the circuits have addressed the issue of "rotation lists" and whether a towing company's placement thereon is a right that rises to the level of a property interest subject to due process protection.[14]  Quite recently, the Eleventh Circuit summarized the positions of the various circuits on this issue in the case of <u>Morley's Auto Body, Inc. v. Hunter</u>, 70 F.3d 1209 (11th Cir. 1995).

---

[14]<u>Compare</u> <u>O'Hare Truck Serv., Inc. v. City of Northlake</u>, 47 F.3d 883, 886 (7th Cir.) (property interests arise from internal rules or regulations only when they have the force of law), <u>cert. granted</u>, ___ U.S. ___, 116 S. Ct. 593 (1995); <u>Blackburn v. City of Marshall</u>, 42 F.3d 925, 938 (5th Cir. 1995) (plaintiff only has protected property interest in remaining on a rotation list if the claim of entitlement is supported or created by a formal and settled source such as state statute or regulatory scheme); <u>Piecknick v. Commonwealth of Pennsylvania</u>, 36 F.3d 1250, 1259 (3d Cir. 1994) (same); <u>White Plains Towing Corp. v. Patterson</u>, 991 F.2d 1049, 1062 (2d Cir.), <u>cert denied</u>, ___ U.S. ___, 114 S. Ct. 185 (1993) ("[R]egardless of their unilateral hopes or expectations, plaintiffs had no cognizable property interest in continued towing referrals . . . and the mere termination of their status thus did not deprive them of a due-process protected interest.") <u>with</u> <u>Pritchett v. Alford</u>, 973 F.2d 307, 317 (4th Cir. 1992) (finding placement on rotation list to be a legally enforceable entitlement by virtue of extensive state regulatory regime); <u>Abercrombie v. City of Catoosa</u>, 896 F.2d 1228, 1232 (10th Cir. 1990) (protected property interest in continued wrecker referrals existed as the referral system was directly governed by a state wrecker statute mandating that referrals should be made on an equal basis).

> [E]very circuit to date that has considered
> the creation of property interests in the
> context of wrecker rotation lists has reached
> a decision in harmony with the principle
> recently distilled by the Fifth Circuit in
> <u>Blackburn</u>:  <u>The existence of a property right
> in such a case turns on whether the alleged
> claim of entitlement is supported or created
> by state law such as a state statute or
> regulatory scheme or decisional law.</u>

<u>Id.</u> at 1216-17 (emphasis added).[15]

Since Spacetown has not claimed that the towing policy at issue herein has the force of state law, its right to receive towing referrals from the police does not rise to the level of entitlement.  Plaintiff's interests are more analogous, therefore, to a "unilateral expectation," which does not have constitutional protection.  <u>See</u> <u>Castro v. United States</u>, 775 F.2d 399, 405 (1st Cir. 1985) (to claim a due process property interest in a benefit, a person clearly must have more than a unilateral expectation of it; he must have a legitimate claim of entitlement) (citing <u>Board of Regents</u>, <u>supra</u>, 408 U.S. at 577); <u>Daley v. Town of New Durham</u>, 733 F.2d 4, 7 (1st Cir. 1984) (unilateral expectation of telecommunications company owner of

_____

[15]Although the plaintiff in <u>Morley's</u> was removed from the "rotation list" entirely, as opposed to being selectively contacted, it could not "point to any Florida statute, state administrative regulation, or any other source of Florida law that provides the asserted entitlement in remaining on the wrecker list," <u>Morley's</u>, <u>supra</u>, 70 F.3d at 1217, and therefore failed to allege a property interest protected by the Due Process Clause of the Fourteenth Amendment.

22

obtaining franchise for cable television did not rise to level of property interest protected by Fourteenth Amendment) (citing <u>Bishop v. Wood</u>, 426 U.S. 341, 344 (1976), and <u>Board of Regents</u>, <u>supra</u>, 408 U.S. at 577).

As plaintiff has not established a property interest in the towing list, the court finds and rules that it cannot claim a property interest in "conducting business without police interference," for the "interference" it claims is only in regard to the towing list and "police ordered tows".[16]  Therefore, plaintiff does not allege a procedural due process violation of any property interest cognizable under the Constitution.


### (2)  Town of Derry (Count X)

Spacetown claims that the Town of Derry's inaction against Chief Garone after having received notice of his alleged favoritism toward a non-Derry business in effect made it the official policy of the town.  Amended Complaint ¶¶ 21, 50.

"The Supreme Court has made clear that a government agency is liable for a deprivation of a constitutional right only where

---

[16]Plaintiff's other alleged facts inferring police interference also do not rise to the level of a protected property interest.  <u>See, e.g.</u>, Amended Complaint ¶ 18 (police chief's referring vehicle owners to a towing company that is not the plaintiff's company or keeping the towing records in disarray).

(1) a constitutional harm takes place and (2) the 'execution of a government's policy or custom . . . inflicts' that harm." de Feliciano, supra, 873 F.2d at 449 (citing Monell, supra, 436 U.S. at 694).

> "[A]though the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels."

Monell, supra, 436 U.S. at 690.

Plaintiff's claimed due process violation does not satisfy the first requirement established by de Feliciano, that "a constitutional harm takes place." de Feliciano, supra, 873 F.2d at 449; see also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1985) (plaintiffs cannot receive an award of damages against a municipal corporation if the defendant inflicted no constitutional harm and plaintiff suffered no constitutional injury); Monell, supra, 436 U.S. at 694. As discussed supra, part 4.b.(1), plaintiff has not asserted a deprivation of a protected property interest and thus fails to state a cognizable procedural due process claim. Accordingly, that portion of Count

24

X alleging that the Town of Derry deprived Spacetown of procedural due process of law is accordingly dismissed.

### c. Substantive Due Process

There are two theories under which a plaintiff may bring a substantive due process claim. Brown, supra, 68 F.3d at 531. "Under the first, a plaintiff must demonstrate a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment." Id. (citing Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir.) (citing Meyer v. Nebraska, 262 U.S. 390, 399 (1923)), cert. denied, 502 U.S. 879 (1991)). "Under the second, a plaintiff is not required to prove the deprivation of a specific liberty or property interest, but, rather, he must prove that the state's conduct 'shocks the conscience.'" Id. (quoting Rochin v. California, 342 U.S. 165, 172 (1952)) (other citation omitted).[17] Irrespective of what theory is ultimately chosen, the Supreme Court has cautioned that it is "'reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended,'" Albright, supra, ___ U.S. at ___, 114 S. Ct. at

---

[17]As found above, supra, part 4.b.(1), plaintiff has not asserted a deprivation of a property interest protected by the Fourteenth Amendment. See, Blackman, supra note 14, 42 F.3d at 938 (no protected property interest when claim of entitlement is not supported by settled state law).

25

812 (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)), according such protections "to matters relating to marriage, family, procreation, and the right to bodily integrity," id. (citing Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 847-48 (1992)).

The First Circuit has found "conscience shocking" conduct only where state actors have engaged in "extreme or intrusive physical conduct." Brown, supra, 68 F.3d at 531 (citing Souza v. Pina, 53 F.3d 423, 427 (1st Cir. 1995)). "[T]he threshold for alleging such claims [of conscience shocking behavior] is high." Id. at 532. Compare Harrington v. Almy, 977 F.2d 37, 43-44 (1st Cir. 1992) (reasonable fact finder could conclude that requiring city police officer to undertake highly invasive psychological examination as condition of reinstatement arises to substantive due process violation) with Brown, supra, 68 F.3d at 532 (callousness toward sensibilities of minors by requiring attendance at explicit program on sexuality does not approach conscience shocking, mean-spirited brutality found in other cases).

In light of the above analysis, the court finds and rules that Chief Garone's alleged conduct does not approach what this Circuit has recognized as "conscience shocking" behavior. Plaintiff's claim against the Town is similarly without merit.

26

See Morley's, supra, 70 F.3d at 1217 n.5 ("Any expectation the plaintiff[] may have had regarding the rotation list do[es] not approach a right 'implicit in the concept of ordered liberty' as required for the triggering of substantive due process protection.") (citing McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994), cert. denied sub nom., McKinney v. Osceola County Bd. of County Comm'rs, ___ U.S. ___, 115 S. Ct. 898 (1995), and quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937), overruled on other grounds by Benton v. Maryland, 395 U.S. 784, 794 (1969)) (other citations omitted). Accordingly, the court dismisses Count IV in its entirety and that portion of Count X pertaining to alleged substantive due process deprivations.

5.  Pendent State Claims

     a.  Violations of the New Hampshire Constitution

In Count IX of its complaint, plaintiff claims damages arising from defendants' alleged violations of part I, article 8, of the New Hampshire Constitution.[18]  Defendants argue, based on the recent New Hampshire Supreme Court decision in Marquay v. Eno, 139 N.H. 708, ___, 662 A.2d 272, 282 (1995), that New

---

[18]Spacetown withdrew its claims for Chief Garone's alleged violations of part I, article 2 (Count V) and part I, article 15 (Count VI) in its Supplementary Objection to Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

Hampshire has not recognized "constitutional torts." See id. ("While this court ultimately has the authority to fashion a common law remedy for the violation of a particular constitutional right, we will avoid such an extraordinary exercise where established remedies--be they statutory, common law, or administrative--are adequate.") (citations omitted). Defendants thus move to dismiss Count IX.

Plaintiff acknowledges "that unless and until the N.H. Supreme Court rules that a tort claim for violation of the State Constitution will lie, the Federal Courts will not entertain such a cause as a pendente [sic] claim." Plaintiff's Objection ¶ 3. Despite this understanding, plaintiff requests "that a dismissal of such a claim be delayed until the final pre-trial conference in the event the N.H. Supreme Court rules on this issue in the interim." Id.

Since this court must make its ruling on the basis of the law as it presently stands, the court declines plaintiff's invitation to defer ruling on said issue pending subsequent Supreme Court pronouncements. In view of the holding in Marquay, supra, Count IX of the amended complaint must be and herewith is dismissed.

28

b.  Violation of Statutory Duty

In Count VII plaintiff has alleged that Chief Garone "was under a statutory duty to refrain from purposeful unauthorized conduct as a chief of police."  Amended Complaint ¶ 41.[19]  RSA 643:1 does not provide the plaintiff with a private cause of action.[20]  See Marquay, supra, 139 N.H. at ___, 662 A.2d at 278 (civil liability flows from the violation of a statute only where the legislature has so intended); State v. Waterhouse, 71 N.H. 488, 489, 53 A. 304, ___ (1902) (penalty prescribed by statutory provision is properly recoverable by criminal proceeding in name of state).  Insofar as plaintiff has not offered any other statutes that could support such a claim, the court herewith grants defendants' motion to dismiss Count VII.

---

[19]As noted by defendants, Spacetown has alleged a statutory duty without any reference to a statute, though it has paraphrased the language of New Hampshire Revised Statutes Annotated (RSA) 643:1 (1986) cited in its original complaint. Motion to Dismiss at 23.

[20]RSA 643:1 provides, in relevant part,

> A public servant . . . is guilty of a misdemeanor if, with a purpose to benefit himself or another or to harm another, he knowingly commits an unauthorized act which purports to be an act of his office; or knowingly refrains from performing a duty imposed on him by law or clearly inherent in the nature of his office.

<u>c. Violation of Common Law Duty</u>

Count VIII, essentially a replication of the duties alleged in Count VII, characterizes Chief Garone's alleged duty to "refrain from purposeful unauthorized conduct as a chief of police, which conduct would benefit himself and/or harm the plaintiff" as grounded in common law. Amended Complaint ¶ 44. Plaintiff does not provide the court with any established legal theory or caselaw to support this allegation.

Although it is generally held that "a person has no affirmative duty to aid or protect another," <u>Marquay</u>, <u>supra</u>, 139 N.H. at ___, 662 A.2d at 278 (citing <u>Walls v. Oxford Management Co.</u>, 137 N.H. 653, 656, 633 A.2d 103, 104 (1993)), the New Hampshire Supreme Court has recognized the countervailing principle that, under certain circumstances, "'the concept of "duty" [may] arise[] out of a <u>relation between the parties</u> and the protection against reasonably foreseeable harm,'" <u>Simpson v. Calivas</u>, 139 N.H. 1, __, 650 A.2d 318, 321 (1994) (quoting <u>Morvay v. Hanover Ins. Cos.</u>, 127 N.H. 723, 724, 506 A.2d 333, 334 (1986)) (emphasis added); <u>Marquay</u>, <u>supra</u>, 139 N.H. at __, 662 A.2d at 278-79.

<u>(1) Relationship of the Parties</u>

"In considering whether a duty exists," the New Hampshire Supreme Court indicates, "'[t]he term "duty" serves to focus attention on the policy issues determining the relationship of the parties.'" <u>Stillwater Condominium Ass'n v. Town of Salem</u>, ___ N.H. ___, ___, 668 A.2d 38, 40 (1995) (quoting <u>Doucette v. Town of Bristol</u>, 138 N.H. 205, 210, 635 A.2d 1387, 1391 (1993)); <u>see also</u> <u>Island Shores Estates Condominium Ass'n v. City of Concord</u>, 136 N.H. 300, 306, 615 A.2d 629, 633 (1992) (not finding a direct relationship between city and condominium association making association's reliance on city's alleged misrepresentation justifiable); <u>Marquay</u>, <u>supra</u>, 139 N.H. at ___, 662 A.2d at 279-80 (duty to allegedly abused children owed only by school employees who share a relationship with the children--not every school employee).

Plaintiff has alleged that the Derry Police Department maintains a "towing list" comprised of Derry towing companies, including the plaintiff, who are available to tow cars from accidents scenes. Amended Complaint ¶ 9. Moreover, "no towing company can send equipment to an accident scene unless and until it has been called by the police, presumably from the towing list in regular order . . . ." <u>Id.</u> Because Spacetown's name appears on the towing list--a listing from which "police-ordered tows"

31

are allegedly to be equitably meted out--the court finds that a relationship exists between the plaintiff and Chief Garone.

### (2) Foreseeable Harm

"The scope of the duty imposed is limited by what risks are reasonably foreseeable." Marquay, supra, 139 N.H at ___ , 622 A.2d at 279. Additionally, "[w]here the potential plaintiff is identifiable, and injury to that plaintiff is therefore actually foreseeable, a duty of care to prevent economic loss or other loss may extend to that plaintiff." Ellis v. Robert C. Morris, Inc., 128 N.H. 358, 364, 513 A.2d 951, 955 (1986), overruled on other grounds by Lempke v. Dagenais, 130 N.H. 782, 795, 547 A.2d 290, 298 (1988); see also Morvay, supra, 127 N.H. at 725, 506 A.2d at 335 (finding (1) investigators hired by insurance company to investigate cause of fire owe duty to insureds to perform investigation with due care despite absence of privity and (2) remedy for economic loss allowed where identifiable plaintiff was foreseeably affected by investigator's work). Accord Spherex, Inc. v. Alexander Grant & Co., 122 N.H. 898, 903, 451 A.2d 1308, 1311 (1982) (regarding duties owed by accountants to third-party beneficiaries, question is "whether the defendant has some special reason to anticipate the reliance of the plaintiff" as

32

recovery will be permitted where plaintiff's identity was specifically known to negligent defendant) (citation omitted).

Plaintiff alleges that Chief Garone's alleged inequitable treatment created a foreseeable risk of injury.

> The police department has always been well aware that such towing jobs usually and very frequently lead in turn to storage and/or repair work, with the result that the difference in equal and unequal treatment by the police can directly result in the gain or loss of well over $100,000 per year to any individual garage on the list.

Amended Complaint ¶ 9.

From the facts as alleged, it appears that, as its name was on the towing list, Spacetown was identified to Chief Garone, and therefore plaintiff's injury from defendant Garone's alleged conduct was reasonably foreseeable. Under these circumstances, Chief Garone owed Spacetown a duty of care to prevent or, in the least, to not intentionally cause the economic loss or interference alleged. See Ellis, supra, 128 N.H at 364, 513 A.2d

at 955.[21]  Accordingly, the court denies defendants' motion to dismiss Count VIII.

## Conclusion

For the reasons set forth herein, defendants' Motion to Dismiss the Amended Complaint (document 7) is granted in part and denied in part as follows:

The Derry Police Department is dismissed as a defendant and stricken from the caption.

The court grants defendants' motion to dismiss Counts I and III because the court will consider plaintiff's "official capacity" claims against Chief Garone to be claims against the Town of Derry.

---

[21]When the circumstances permit, New Hampshire courts have previously found situations where police officers owe a common law duty.  See, e.g., Weldy v. Town of Kingston, 128 N.H. 325, 331, 514 A.2d 1257, 1260 (1986).

> Though "[t]he Town of Kingston's unwritten policy did not require detention of teenagers found illegally transporting alcohol, nor did it require the police to notify their parents . . . regardless of any statutory duty, action in accordance with the town's policy was a violation of the common law duty of due care.  Police officers are obligated to protect the general public, and reasonable prudence dictates that teenagers illegally transporting alcohol be detained.

Id.

34

Defendants' motion to dismiss is granted as to Counts IV (due process); VII (statutory duty); and IX (state constitutional torts) for failure to state a claim cognizable under the law.

Defendants' motion to dismiss Count X is granted as to the due process claim, both substantive and procedural, against the Town of Derry and denied as to the equal protection claim.

All other aspects of the Amended Complaint raised in the Motion to Dismiss and not addressed herein are otherwise denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

February 14, 1996
cc:  Stanton E. Tefft, Esq.
     Donald A. Burns, Esq.

35